ROBERT L. RODDY AND WIFE, and others, plaintiffs in error, vs. AARON J. COX, defendant in error.

A joint tenant cannot maintain trover against his co-tenant, except in a case where one has taken several possession to the exclusion of the other; and in such a case, the measure of his recovery is the value of his interest in the particular property, after allowing his co-tenant the value of *his* interest in all other property covered by the same joint title, and held by the plaintiff adversely to his co-tenant. In other words, a recovery in such a case, is a severance of the joint tenancy, and the defendant may refuse a severance as to the part in his adverse possession, unless the plaintiff submits to a severance of that part of the joint property which may be held by him in the like adverse possesion.

In Equity, in Monroe Superior Court. Decision on demurrer, by Judge CABANISS, at chambers, 21st June, 1859.

The following judgment pronounced by Judge CABANISS, the presiding Judge, sustaining the demurrer, sets out all the facts necessary to a full understanding of the case, and the opinion of this Court, viz :

The bill in this case is filed by R. L. Roddy and wife, W. L. Lampkin and wife, R. N. Martin, and Andrew Dunn, and alleges that they are children, and heirs at law of Josee Dunn, deceased; that they are the only sisters and brother of David A. Dunn, of Pike county, Alabama, deceased, and claim to be heirs at law of said David A. Dunn, together with his widow; that said Josee Dunn, before his death, made and

executed his last will and testament, in and by which he gave and bequeathed to his said son, David A. Dunn, certain negroes and property therein named, which he left in the possession of Stephen H. Martin, as trustee for his said son, and his heirs, and not to be subject to any of the debts of his said son, but that he should have the income thereof yearly; that said Stephen H. Martin took possesion of said property and held the same in trust for said David A. Dunn, to pay him the income thereof yearly during his life, and to hold the remainder for his heirs; that said David A. Dunn never had any estate in said property, except the annual profits thereof; that said Stephen H. Martin held said property in trust as aforesaid for many years, until said David A. Dunn removed to the State of Alabama, when he delivered said property to a trustee appointed in said State, viz: Franklin A. Rutherford, who took charge of the same in terms of the original trust; that said David A., married Octavia Rutherford, in said State of Alabama, and afterwards died, leaving no child, but leaving his said wife Octavia, and his sisters and brother, the complainants in this bill, his heirs at law, and his estate is subject to distribution among them according to the laws of said State, his widow being entitled to one-fourth, and his next of kin to the remaining three-fourths.

It is further alleged, that said Franklin A. Rutherford filed a bill in the Chancery Court of Pike county, Alabama, and had the estate of said David A. Dunn decreed insolvent, and that said property was not subject to his debts, but that he had only a life interest in the same, and thereupon the said property was turned over to said Rutherford for distribution among the heirs at law of said David A., and the complainants charge that said property is subject to distribution between them and the widow of the said David A. Dunn.

It is alleged, that the widow of said David A., has intermarried with one Aaron J. Cox, to whom said Franklin Rutherford has turned over all of said property and negroes, ex-

Roddy and wife et al. vs. Cox.

cept one, and that he has since moved to some distant State, and that he and said Rutherford both reside beyond the jurisdiction of this State.

It is further alleged, that one of said negroes, by the name of *Troup*, ran away from said Cox, and came to the house of Robert L. Roddy, one of the complainants, in whose possession he has since been with the approval of the other complainants.

It is further charged, that said Aaron J. Cox has commenced his action of trover in Monroe Superior Court against said Robert L. Roddy for said negro *Troup*. And complainants allege that they are jointly interested with said Aaron J. Cox, in said negro, and are entitled to have said negro partitioned among them, share and share alike, and for this purpose they pray that he may be sold, and that the proceeds of the sale and hire of said negro be divided amongst them, if it shall be found that said Cox has not received more than his share of the estate of said David A. Dunn, deceased, but they charge that he has received, and has now in his possession some where in the western States, all the remainder of said estate, amounting to greatly more than the value of said negro *Troup*.

They pray that said Cox be enjoined from further prosecuting said action of trover, and that said Cox and Rutherford may be decreed to account to and with the complainants for the amount and value of the negroes, which are in the possession of said Cox, together with their hire, deducting from the same his share, acquired by virtue of his intermarriage with the widow of said David A. Dunn, and his share of the boy *Troup*.

To this bill, defendants have demurred, upon the following grounds, viz:

1st. For want of equity in the bill.

2d. That the complainants have no interest in the property sued for, and no right to recover it, but that it passed under the will of Josee Dunn, deceased, to Octavia Dunn, widow

of said David A. Dunn, as his sole heir at law, according to the laws of this State, where said will was made; and upon her intermarriage with Aaron J. Cox, the negro in dispute vested absolutely in him by virtue of his marital rights.

3d. That the bill is multifarious.

The first two grounds of demurrer may be considered together, as they are virtually the same, for if the second is true, the first is necessarily so; if the complainants have no interest in the negro sued for, it follows as a necessary consequence, that there is no equity in the bill to entitle them to relief.

The question made by the demurrer is, who are the heirs at law of David A. Dunn, deceased, in the sense of the term "heirs," as used by Josee Dunn in his last will and testament? Are they only to be considered "heirs" who are such according to the laws of Georgia, where the will was made, or are they to be held to be his heirs, who are such according to the laws of Alabama, where David A. Dunn was domiciled at the time of his death? According to the allegations in the bill, the last will and testament of Josee Dunn was made and executed in Georgia, where the testator at that time, and at his death, was domiciled. By that will, he bequeathed the negro in controversy together with other property, to his son David A. Dunn, to be held in trust by Stephen H. Martin for said David A. Dunn and his heirs, not to be subject to any of the debts of his said son, but he was to have the annual profits of the same. David A. Dunn, after the death of his father, moved to Alabama, and the negro was removed to the same State, and went into the possession of the trustee appointed in that State. David A. Dunn·there intermarried with Octavia Rutherford, and after the lapse of some years, died, leaving no issue.

According to the laws of the State of Alabama, the heirs at law of a man, who dies without issue, leaving a widow, are his widow and next of kin, the next of kin being broth-

ers and sisters, if any; the widow is entitled to one-fourth, and his next of kin to three-fourths of his estate.

Admitting (and that is the question made by the demurrer) that only a life estate in the negro sued for was bequeathed to David A. Dunn with remainder to his heirs, the complainants insist that, according to the law of the domicil of said David A. Dunn, at the time of his death, they are heirs at law of said David A., and are entitled to their respective shares of his estate, and, being his heirs, are, in that right, entitled to their shares of the negro Troup.

The defendants reply, that the property passes under the will of Josee Dunn, deceased, and his will must be construed according to the law of *his* domicil, and according to that law, the widow of David A. Dunn, who died without issue, is his sole heir at law, and is entitled to the property bequeathed to him and his heirs. They insist that the word " heirs," must be construed according to the law of the domicil of Josee Dunn, and not according to the law of the domicil of David A. Dunn.

In consideration of this question, it is essential to bear in mind, that the property in dispute descends, not *as the property* of David A. Dunn to his heirs at law, but as the property of Josee Dunn, first to his son David A., during his life, and after his death to his heirs.

If it is to be distributed as the property of the estate of David A. Dunn among his heirs, it would unquestionably go to, and be distributed among those, who are his heirs at law according to the law of his domicil at the time of his death. But it was his property only during his life; at his death all his right, title and interest in it, and all dominion and control over it, ceased forever. According to the facts admitted by the demurrer, he had no right to direct the disposition of it by will, nor did it derive any inheritable quality from him under the law of his domicil; its inheritable quality comes from another source; from Josee Dunn, and the disposition made of the property in his will. After the

death of David A. Dunn, it descends not from his estate to his heirs, but from the estate of Josee Dunn to the heirs of David A. Dunn. Who, then, are the heirs of David A. Dunn, in the sense and meaning of that term, as used by Josee Dunn in his will?

The rule of construction in such cases, long and universally recognized by the Courts of all countries, where systems of enlightened jurisprudence prevail, must settle this question. The rule in regard to wills and testaments of personal property is thus laid down in *Story's Conflict of Laws, Sec.* 469, *a :*

"In such cases, where the will or testament is made in the place of the domicil of the testator, the general rule of the common law is, that it is to be construed according to the law of the place of his domicil in which it is made. A will, therefore, made of personal estate in England, is to be construed according to the meaning of the terms used by the law of England; and this rule equally applies, whether the judicial enquiry as to its meaning and interpretation arises in England or in any other country."

"A will must be interpreted according to the law of the country where it is made, and where the party making the will has his domicil."

*Lord Ch. Lyndhurst, in Trotter vs. Trotter,* 4 *Bligh's Reports, N. S.* 502.

"The same rule will apply to the ascertainment of the persons who are to take under a will or testament, when it is made by words designating a particular class, or description of persons. Who are the proper persons entitled to take under the *designatio personarum* is a point to be ascertained by the law of the place where the will is made, and the testator is domiciled. Thus, for example, if a testator should bequeath his personal estate to his "heir at law," who is the person entitled to take under that description, will depend upon the law of his domicil. If domiciled in England, it will be the eldest son; if domiciled in most of

the States of America, it will be all his children. So if a person domiciled in Holland, should bequeath his property to the "male children" of certain persons, and the question should arise, as well it might, whether by "male children" be meant male descendants, that is, descendants claiming through males only, the question would be decided by the the interpretation put upon those words by the law of Holland." *Story's Con. of Laws*, Sec. 479, e.

The same rule is laid down by the Supreme Court of the United States in the case of *Harrison et al. vs. Nixon,* 9 *Peters*, 483.

In that case, the testator, Matthias Aspden, willed that his estate, real and personal, should go to the party, who would be his lawful heir, in case there might arise any doubts on that head.

The bill was filed in the Circuit Court of the eastern district of Pennsylvania, by *Samuel Packer vs. Henry Nixon,* executor of the last will and testament of Matthias Aspden, in which he alleged, "that on the 6th day of December, in the year of our Lord, 1791, one Matthias Aspden, Esquire, a citizen of the State of Pennsylvania, made and executed his last will and testament, bearing date the same day and year, wherein and whereby he gave and bequeathed all his estates, real and personal, to his heir at law." The complainant alleged himself to be the heir at law of the deceased, and prayed an account and distribution of his personal estate.

The defendant answered, among other things, that the property of the testator was claimed by John Aspden, of London, as entitled thereto, under the devise of said testator, as his heir at law.

Pending the suit, petitions were filed by George Harrison and others, who claimed to have distribution among them, of the estate of the testator, as the party contemplated by the will, and prayed that the Court would direct inquiries to be made as to their respective claims. The Court ordered that

Roddy and wife et al vs. Cox.

it be referred to a Master to examine, and state the next of kin to the testator

The Master reported that John Aspden was "heir at common law," and the Circuit Court decreed that the executor should account to, and pay over to John Aspden, the heir at law of the said Matthias Aspden, deceased, the personal estate in his hands, after paying debts, &c. From this decree George Harrison and others took an appeal to the Supreme Court.

The domicil of the testator was not distinctly averred in the bill, and the Supreme Court Held that an averment of the testator's domicil was indispensable, and that a true interpretation could not be made until the country by whose laws the will was to be interpreted was first ascertained; and the case was remanded to the circuit Court for the purpose of having suitable amendments made in this particular.

Mr. Justice Story, who delivered the opinion of the Court, said:

"The present is the case of a will: and so far, at least, as the matter of the bill is concerned, is exclusively confined to personalty bequeathed by that will. And the Court are called upon to give a construction to the terms of the will; and in an especial manner to ascertain, who is meant by the words heir at law, in the leading bequest in the will. The language of wills is not of universal interpretation, having the same precise import in all countries, and under all circumstances. They are supposed to speak the sense of the testator, according to the received laws or usages of the country where he is domiciled, by a sort of tacit reference, unless there is something in the language, which repels or controls such a conclusion. In regard to personalty, in an especial manner, the law of the place of the testator's domicil governs in the distribution thereof, unless it is manifest, that the testator had the laws of some other country in view.

"No one can doubt, if a testator born and domiciled in

England during his whole life should, by his will give his personal estate to his heir at law, that the *descriptio personœ* would have reference to, and be governed by the import of the term in the sense of the laws of England. The import of them might be very different, if the testator were born and domiciled in France, in Louisiana, Pennsylvania, or in Massachusetts. In short, a will of personalty speaks according to the laws of the testator's domicil, where there are no other circumstances to control their application: and to raise the question, what the testator means, we must first ascertain what was his domicil, and whether he had reference to the laws of that place, or to the laws of any foreign country.

" The opinion of the Court distinctly and clearly recognizes the doctrine that the import of the words " heir at law, is to be ascertained by reference to the law of the testator's domicil; and he, and no one else, is heir at law, whom that law makes such. And the case was remanded to have an averment of the testator's domicil at the execution of the will, and at his death, inserted, so that the country by whose laws the will was to be interpreted might be ascertained. When that was done, there was no doubt as to the application of the rule."

The same rule is recognized by Chancellor Kent, in *Holmes vs. Remsen,* 4 *Johnson's Ch. Rep.* 460.

"The succession to and distribution of personal property is regulated by the law of the owner's domicil, and not by the *lex loci rei sitœ.*"

Sec. 481, *Story's Con. of Laws,* is quoted and relied on by counsel for complainants.

" The universal doctrine now recognized by the common law, although formerly much contested, is that the succession to personal property is governed exclusively by the law of the actual domicil of the intestate at the time of his death. It is of no consequence what is the country of the birth of the actual intestate, or of his former domicil, or what is the actual *situs* of the personal property at the time

of his death ; it devolves upon those who are entitled to take it as heirs or distributees, according to the law of his actual domicil at the time of his death."

It has been already remarked, that the property in dispute does not descend as the property of David A. Dunn—if it did, the doctrine in the section above quoted would be applicable. It is not inherited from him, but passes under the will of Josee Dunn, after the termination of the life estate of David A. Dunn, to the heirs of David A. Dunn. Who those "heirs" are, and who answer that *descriptio personarum* must be ascertained by reference to the import of the term according to the laws of Georgia, the place of the testator's domicil at the making of the will, and at his death. When he used the word "heirs," the presumption is, he meant those who are heirs according to the laws of Georgia, and not those who are heirs according to the laws of Alabama—until this presumption is removed, it is conclusive—it may be removed by showing that at the time the will was executed, the testator had reference to the laws of Alabama, and not to those of Georgia, but this does not appear in the will itself, or otherwise. Construing, then, the word "heirs" according to the laws of Georgia, the widow of David A. Dunn, who died without issue, is his sole heir at law—and as such the property bequeathed by the will of Josee Dunn to his son David A., and after his death to his heirs, passed to her and her alone, and not to her and the next of kin of David A. Dunn, jointly, according to the laws of Alabama.

If the Court is correct in this construction of the word "heirs" in the will of Josee Dunn, the complainants have no interest in the negro sued for, and no right to recover.

This view being decisive of the case according to the question made by the demurrer, it is unnecessary to determine the other ground, further than to say, that in the opinion of the Court the bill is multifarious, but that defect

can be cured by amendment, and the bill will not be dismissed on that ground.

The Court will not consider and decide the question, whether the property bequeathed by Josee Dunn in his will to his son David A. Dunn did not, according to the legal import and effect of the terms used, vest absolutely—that question not being raised by the demurrer, and being reserved for argument on the plea. If the judgment of the Court on the demurrer should be reversed, the Court will then hear and determine the other question at the proper time.

It is ordered and adjudged by the Court, that the demurrer be sustained, and that the bill be dismissed on the ground that the complainants have no interest in the negro sued for, and have no right to the relief they seek, the widow of David A. Dunn being his sole heir at law, and as such is entitled to the property bequeathed to him and his heirs in the will of Josee Dunn, deceased.

To which decision, counsel for complainants except.

PEEPLES & CABANISS; TRIPPE & STEVENS, for plaintiffs in error.

JOHN RUTHERFORD ; and A. D. HAMMOND, contra.

By the Court.—STEPHENS J. delivering the opinion.

We concur with the Court below, that there is no equity in this bill, but our view of the rights of the parties is very different from that expressed by Judge CABANISS. Whether the estate given by the will of Josee Dunn, to his son David, was a fee simple, or only life estate, with remainder to his heirs at law, and in the latter case whether the heirs at law are only the widow, or are the widow together with the rest of kin, are questions which were strenuously argued before us, but which both sides at last besought us not to decide, if a decision of them could be avoided.

Roody and wife et al. vs. Cox.

We think such a decision not at all necessary to a disposition of the case, and will therefore refrain according to the wishes expressed to us, from giving our views upon these points indicated; but will content ourselves with stating the reasons why we think that, upon any one of the views suggested, this bill was unnecessary, and therefore without equity.

If the estate conveyed, was a life estate to David, with remainder to his heirs at law, and the widow is sole heir, then the bill fails for the reason assigned by Judge CABANISS, that is to say the complainants simply have no interest in the matter. But suppose the heirs at law to be the widow, together with the complainants, who are the next of kin. This was decidedly the favorite hypothesis of the complainants. If it be the true one what *need* have they for the bill?—they, who are defendants in the trover case, and Cox, who is plaintiff, are *joint tenants* of the negro. What need has one joint tenant for an injunction to restrain his co-tenant from recovering the property from him? His defence at law is good, and he needs no more. But it may be suggested that although, as a general rule, one joint tenant can not maintain trover against his co-tenant; yet he may do so when, as in this case, the tenant in possession sets up his own adverse claim to the whole, to the exclusion of his co-tenant. This also is true; but in such a case the recovery is founded on a *partition*. Neither joint tenant is entitled to recover from the other, under any circumstances, the entire property jointly owned, but only the value of his own interest in it. Such a case results in a *partition* of the *joint property*—the *whole* property which is held by the *same joint title*. They may, if they choose, remain joint tenants, but either has the right to a *severance*. This is a severance of the *whole*, and not of a *part*. Now the bill alleges in this case, that Cox, the plaintiff in trover, has in his possession, to the exclusion of his joint tenants, much more than his share of the whole joint property. If so, he

is not entitled to recover his interest in the particular negro, Troup, whom Dr. Roddy happens to have in his possession. Cox cannot insist on a severance as to Troup, without allowing it as to all the rest. Upon the supposition that the property is to *remain joint*, one joint tenant cannot recover from another at all; his recovery must be based upon a severance, and then the *measure* of his recovery would be the value of his interest in the particular property sued for, after an apportionment of the *whole*. But an apportionment in this case defeats the right of recovery at all, and there was no need of an injunction. True, the bill does more than ask an injunction; it seeks a full apportionment, and it is contended that the bill ought to have been retained for this purpose. It cannot be retained for that purpose, because of the *want of jurisdiction* over Cox, who, as shown by the bill, resides out of the State, and was not caught in the State for service. This part of the bill rests upon the other, and of course falls with it. Without the injunction as a support for the jurisdiction, it becomes simply a suit in this State against a resident of some other State, who does not appear ever to have put his foot inside of the limits of Georgia. As it was strongly intimated in the argument that the rights of these parties would come before us again, upon the points which we do not decide, I will not pass from this part of the subject, without indicating a point on which we desire to have authority produced, if any exists; that point is, who are the heirs of David Dunn (in case David did not take a fee) meant by the will of Josee Dunn? We do not feel the least difficulty in holding that the will (Josee Dunn having died domiciled in this State) must be construed according to the laws of Georgia; but we cannot see that this necessarily leads to the conclusion that the widow is the only heir (there being no children). The question with this assumption then, becomes this; who are the heirs of David Dunn's personal property *according to the laws of Georgia, he having died domiciled in the State of Ala-*

Roddy and wife et al. vs. Cox.

*bama?* The *heir* is he on whom the law casts the inheritance.    Different laws cast it on different persons, but still, he on whom it is cast, is the heir.    Then on whom would the *laws of Georgia* cast the personal property (situate in Georgia) of a person dying *intestate, domiciled* in Alabama?  The question is not, on whom the laws of Georgia would cast the personal property of David Dunn, *if* he had died domiciled in Georgia; that is a supposititious case.  The case before us is, when he died domiciled in *Alabama.* This exhausts two out of the three possible cases; the other is that of a fee in David.    In that case the property must pass through the hands of David's administrator or executor, for payment of debts first, and then for distribution according to law, or the will, if there be one.    Of course the heirs at law could not maintain trover before this has been done, and there is no need of an injunction to restrain Cox in that view; but it is suggested that this has been done, and that the decree in Alabama is an *adjudication* that the property belongs for distribution to the heirs at law; that whatever estate may have been created by the will of Josee Dunn, it is now *res adjudicata.*  This may be so to the extent of binding those creditors who were parties to decree, or it may be so without any qualification whatever; but then if so, it only amounts to this—that the property belongs to the heirs at law, (if more than one) as joint tenants.    This latter case we have already shown, needs no aid from an injunction; so that in any of the three views taken of the interests of these parties, we are satisfied there was no use for an injunction, and no jurisdiction for an apportionment.    The plaintiff in trover can *submit* to an apportionment if he chooses, but there is no power here to enforce it against him.

Judgment affirmed.