HARRIS *v.* NEUMAN *et al.*

No. 10334.   DECEMBER 12, 1934.

*James W. Smith* and *R. J. Bacon,* for plaintiff.

*Leonard Farkas* and *W. H. Burt,* for defendants.

GILBERT, J. ■ The allegations of the petition as amended state a good cause of action. What passed between Ed Harris and Neuman, according to the petition, constituted Neuman an agent to procure the money with which to pay the debts which were in existence before the $1750 loan was procured from Mrs. Bessie Harris. Neuman received this $1750 in trust to apply to the old debts of Ed Harris. The allegations are sufficient to justify the conclusion that petitioner's $1800, solicited from her by Neuman for the purpose of paying Ed's debt, the $1750 loan from Mrs. Harris, was used for that purpose. The loan deed has been canceled. If petitioner's money was in fact so used by Neuman, she is entitled in equity to have a lien on the land for the amount paid by her. It is alleged that he "extorted" the payments from her by the statement that if she did not make them she would be turned out of house and home; and that, although she did what Neuman wanted her to do, the home was nevertheless lost to her and Ed. The payments by her extended over a period of years, but the circumstances are not such as create an ordinary account on which all items over four years old are barred. The allegations that Neuman is under obligation to repay to petitioner the funds delivered by her to him to apply on her husband's debt is a conclusion of law which is not maintainable. So far as the allegations show, Neuman was not Ed's creditor. The moneys were given to Neuman to be paid on the debt due Mrs. Bessie Harris. Presumably they were so ap-

plied. Mrs. Bessie Harris has not been made a party to the case, and no relief is sought from her. In the brief of the defendants in error the case is treated as though Neuman had been Ed's creditor, and that the moneys paid by Virginia had been used to pay the debt which Ed owed Neuman. Counsel state that "E. E. Harris, who was insolvent, borrowed $1750 from said Neuman individually, on his pecan-acreage tract and home." They claim that the loan made from Mrs. Bessie Harris does not enter into the case. They deny that there is any trust involved, express or implied; and appear to assume that the action is merely one to recover the moneys paid by petitioner on her husband's debt, and that four years have expired since the payments were made, and that the claim is barred. In our opinion, such is not the case. The essential facts which appear from all the allegations are that there never was but one loan, and that Neuman has never put any money into the land or used any of his own money for Ed Harris's benefit; yet he is in possession of the property and holds a fee-simple deed to it. For that deed he paid nothing. Vested with the record title from Ed Harris, Neuman borrowed, for the benefit of Ed Harris, the $1750 from Mrs. Bessie Harris; and it was this money, not Neuman's, which was used to pay Ed's debts. It can not be said that it was Neuman's money and that he lent it to Ed. The land pledged to Mrs. Bessie Harris was that which belonged to Ed Harris, and the money received from Mrs. Bessie Harris was held by Neuman in trust to use for Ed Harris's benefit. So far as the record shows, Ed Harris was not a debtor of Neuman at the time he sought the loan of $1750. Neuman has never held a note signed by him. Only one loan is involved, the loan from Mrs. Bessie Harris, which was afterwards paid by funds of plaintiff, and canceled. As between him and Mrs. Bessie Harris, Neuman was the borrower, but in equity Ed Harris was the real debtor.

It appears that in equity the plaintiff is the one who should hold the claim against the land, and that Neuman should be as completely out of the situation as Mrs. Bessie Harris is. It is true that in the original petition she prayed for recovery from Neuman for funds "paid by your petitioner to him on the debts of her husband," but the rest of the sentence is "and that all the funds whatsoever in any wise so paid on plaintiff's husband's debts aforesaid may be declared to be an equitable lien on the title to the said lands,"

etc. We hold that the plaintiff is not entitled to the relief asked in the first part of the quoted sentence; but that if on the trial she prove the allegations she has made, she will be entitled to a decree in equity in line with the relief sought in the latter part of the sentence quoted. Petitioner also asks for a declaration of the trusts "herein asserted," and that "any and all papers, documents, and instruments showing any contrary set-up or relationship may be canceled," etc. If she prove her case as laid, she will be entitled to this relief. We do not regard the case as one brought by reason of the protection afforded to a wife under the Civil Code (1910), § 3007; that is, a suit brought by a wife to recover moneys illegally paid to discharge the debt of her husband. A petition should not be dismissed because of an inconsistent prayer, where it contains prayers for relief appropriate to the allegations of fact; but the better practice is to strike the inconsistent prayer. *Pierce* v. *Middle Ga. Land &c. Co.*, 131 *Ga.* 99 (2) (61 S. E. 1114). No rights of innocent parties are involved, and the plaintiff should be decreed to be entitled to an equitable lien against the land to the extent that her money was used to liquidate the debt secured by the legal title which Mrs. Bessie Harris held. It is alleged that Neuman by threats procured the moneys from the plaintiff, and that he knew the debt was that of Ed Harris. The cancellation of the loan deed of Mrs. Bessie Harris put the legal title back in Neuman, and under the allegations that is not in accordance with equity or good conscience. Under the equitable rule stated in *Parlin* v. *McClure*, 169 *Ga.* 576 (150 S. E. 835), and cit., the plaintiff, if she proves her case as laid, will be entitled to establishment of an equitable claim against the land to the extent that her moneys have gone into the payment of her husband's debt against it.

■ An action to secure such a decree would not be barred until after seven years from the date the right of action accrued. *Wallace* v. *Mize*, 153 *Ga.* 374, 383 (112 S. E. 724). See also *Harrison* v. *Adcock*, 8 *Ga.* 68; *Keaton* v. *Greenwood*, 8 *Ga.* 97; *Scott* v. *Haddock*, 11 *Ga.* 258; *Keaton* v. *McGwier*, 24 *Ga.* 217 (3); *McDowell* v. *Donalson*, 149 *Ga.* 600 (101 S. E. 578); *McFadden* v. *Dale*, 155 *Ga.* 256 (116 S. E. 596); *Ulman* v. *Magill*, 155 *Ga.* 555, 557 (117 S. E. 657); *Smith* v. *Hancock*, 163 *Ga.* 222 (136 S. E. 52); *Citizens & Southern National Bank* v. *Ellis*, 171 *Ga.* 717 (156 S. E. 603). There is nothing in *Smith* v. *Ardis*, 49 *Ga.* 602,

cited by counsel for defendants in error, contrary to the conclusions we have reached. The decision in that case was obviously correct, because about ten years had elapsed between the last payment and the filing of the amendment seeking individual liability as to Smith. What was said by the court will be considered in the light of the facts of the case before it; and so considered, the decision does not have any bearing on the present case. It does not appear from this petition that any of the items are so clearly barred by the statute of limitations that the demurrer on that ground would be good. As to any balance of money of the petitioner which is held by the bank, it is well settled that limitation does not run against a bank deposit until a check is drawn against it and payment refused, or some other adverse claim to the deposit is made by the bank. Petitioner, in February, 1930, made demand on the bank for the money to her credit, and the present suit was filed on November 7, 1933, which was within four years from that time. We have carefully considered the petition and the amendments, and it appears that the earliest date at which it can be said that any overt act in violation of petitioner's rights occurred, or any fact appeared which should have put her on inquiry, was when she went to the bank in February, 1930, to draw on her account, and was told by Neuman that it had all been drawn out; whereupon she asked for her pass-book, and Neuman refused to deliver it to her.

■ A pass-book is presumed to be in the possession of the customer, except when it is left with the bank to be balanced. This book is the property of the customer. Furthermore, it has been held that he has the right to inspect the books of the bank on all proper and reasonable occasions, and that for this purpose the officers in charge of the books are agents of both parties. 7 C. J. 639. Section 14 of the banking law of 1919 (Ga. L. 1919, p. 135), by giving the right to the superintendent of banks, on taking possession of a bank, to notify depositors to bring in their pass-books to be balanced, is a tacit recognition of the fact that these pass-books under all normal conditions are in the possession and under the control of the depositors. A reciprocal duty exists between the bank and a depositor with reference to the account and the pass-book. First National Bank v. Patty (Tex. Civ. App.), 62 S. W. (2d) 626. Also, it was held in England Nat. Bank v. U. S. (C. C. A.), 282 Fed. 121, that it is the duty of a bank, upon

the request of a depositor, to furnish him with a statement of his account and return his canceled checks. In the petition it is alleged that in February, 1930, Virginia went to Albany Trust & Banking Company and asked for her pass-book, and that Neuman, who was its cashier, refused to deliver it to her or to show it to her, claiming that it was the property of the bank. She then demanded "all funds from said bank that were lawfully to her credit and deposit, and a statement and accounting thereof, and all said demands were refused, and petitioner was left without her funds and without her pass-book and without any accounting; and petitioner charges defendants with the wrongful and illegal concealing of her accounts aforesaid." These allegations stated a just ground of complaint against Neuman and the Albany Trust & Banking Company. The petition as amended was not subject to any of the grounds of demurrer upon which it was dismissed, and the motion to strike should not have been sustained. There was equity in the petition, and it did not violate the rule which prohibits the joining of different causes of action against different defendants. The petition relates to matters of the same nature. Both the bank and Neuman are proper parties. The original application for a loan was made by Ed Harris to the bank and to Neuman as cashier. Petitioner's moneys which were used to pay Mrs. Harris went in part directly to Neuman through government checks, and in part out of her deposits with the bank. Whether Neuman, when he borrowed the money from Mrs. Harris, acted individually or in his capacity as cashier of the bank is not clear; but it is plain that Ed Harris in the beginning approached the bank with the hope of getting the loan from the bank, and his first contact with Neuman was in the latter's representative capacity. Full justice can not be done in the case without an inquiry to which both the bank and Neuman are parties. It may be added that the withholding of the pass-book in violation of plaintiff's rights, and the refusal to give her a statement of her account, are in their very nature bank items, and they are intimately connected with all the other matters complained of. Ed Harris also has been properly brought in. He is decidedly an interested and necessary party. If it be found on the trial that the deed he made to Neuman or the loan deed to Simon should be canceled in the granting of the prayer of the second amendment that "any and all papers, documents, and instruments showing any

contrary set up or relationship may be canceled as frauds," that could not be done without him before the court. The court erred in sustaining the general demurrers to the petition and the motion to strike.    *Judgment reversed. All the Justices concur.*