29758. JETT *v.* SECURITIES INVESTMENT COMPANY.

DECIDED DECEMBER 2, 1942.

*W. L. Nix, A. G. Liles,* for plaintiff in error.
*Pemberton & W. J. Cooley, Leon & Dean Covington, J. R. Smith,* contra.

SUTTON, J. Securities Investment Company brought a bail-trover action against H. G. Jett to recover, under a retention-of-title contract, certain described meat-market fixtures, and also to recover certain groceries, goods and merchandise set apart to the defendant as a homestead exemption after the defendant had executed to the plaintiff a note for the unpaid balance of the purchase price of the meat market fixtures, the note containing the provision: "And in consideration of the credit extended we and each of us agree that, in the event any party hereto is adjudged a bankrupt, to obtain the full homestead and exemption allowed under said laws [the laws of Georgia, any other State, or of the United States], and not to disclaim the same. A sufficient amount thereof to discharge this debt in full is hereby transferred, conveyed, and assigned to the holder hereof, said holder being hereby constituted and appointed my or our attorney in fact, in the name and stead of any party hereto, to make claim for the full amount allowed as a homestead or exemption under said laws in the event we, or either of us, should fail to claim the same." The defendant defended on the ground of partial failure of consideration under

an implied warranty as to the purchased fixtures, contending that he had paid more than their value and that they were in fact worthless, and, further, that the description in the homestead assignment was insufficient to convey title. By cross-action he sought to recover from the plaintiff the sum of $200 because of the fact that escaping gases from the alleged defective market fixtures had damaged his stock of goods to that extent. The jury returned a verdict for the plaintiff for $326.67, and the exception is to the judgment overruling the defendant's motion for new trial.

1. The evidence showed that on April 17, 1933, the defendant purchased from the plaintiff certain meat-market fixtures and equipment at an agreed price of $815 without an express warranty, making a down payment of $115. For the balance of $700 he executed and delivered to the plaintiff his note for $250, due January 1, 1933, and another for $450, due January 1, 1934, at the same time executing a contract in which title to the property was retained in the plaintiff until the discharge of the indebtedness. The defendant paid the $250 note but, being unable to meet the $450 note at maturity, executed an extension note in the same amount to the plaintiff, payable in twelve monthly installments of $37.50 each, the first being due February 1, 1934. This note contained the assignment of homestead exemption as hereinabove set forth, and the note which it extended contained a similar provision. There was testimony for the plaintiff that a payment of $50, evidenced by an entry on the back of the note under date of April 17, 1934, was paid on the date indicated, but the defendant contended that the payment was made about a week after he executed the note of $450 on January 1, 1934.

It is conceded that the sum of $400 is a correct unpaid balance on the account, but the defendant testified that the market fixtures were wholly worthless, and the plaintiff was unable to show to the contrary. However, it was ruled by this court in a former appearance of the case here *(Securities Investment Co. v. Jett, 63 Ga. App. 384, 11 S. E. 2d, 36)*, that, in a case of implied warranty, if the defendant purchaser made a payment after notice of defects in the market fixtures he waived the defects. The defendant had obtained a verdict in this case, but the judgment was reversed because the evidence showed that after knowledge of the defects claimed the defendant had made a payment of $50 on the purchase price. On

the trial now under consideration there was a conflict in the evidence as to the date of payment, but under the testimony adduced for the plaintiff the jury was authorized to find that the defendant, after knowledge of the defects, made the payment of $50 on April 17, 1934, and not shortly after January 1, 1934, and before notice of the defects, as he insisted. Accordingly, the verdict of the jury was authorized unless it could be said that no title was shown in the plaintiff as to the goods which in the defendant's bankruptcy proceeding were set apart to him as a homestead exemption. The aforementioned clause conveyed legal title to the plaintiff when the property of the defendant, claimed by him as a homestead exemption, was set apart in the bankruptcy proceeding. "A joint promissory note containing a provision that the makers jointly and severally transfer, sell, assign, and convey to the payee of the note a sufficient amount of his or their homestead exemptions to pay the note in full, and that in the event these exemptions are obtained or granted to either of the makers in the bankruptcy court, then they request and direct the trustee to deliver to such payee a sufficient amount of the property or money claimed as exempt to pay off the amount due thereon, conveys the title to the property of the bankrupt afterwards set aside to him as a homestead exemption. *Saul* v. *Bowers,* 155 *Ga.* 450 (117 S. E. 86) ; *Comer Bank* v. *Meador-Cauthorn Co.,* 160 *Ga.* 719 (128 S. E. 785)." *Martin* v. *Citizens Bank,* 170 *Ga.* 180 (152 S. E. 234). See also *Livingston* v. *Epsten-Roberts Co.,* 50 *Ga. App.* 25, 29 (2) (177 S. E. 79).

It is shown by the evidence that the defendant did institute a bankruptcy proceeding after the execution of the note to the plaintiff on January 1, 1934, and that he was adjudicated a bankrupt on October 30, 1934, and that he claimed as an exemption the stock of groceries, etc. described in the bail-trover action as being located in his store in Buford, Georgia. It is undisputed that a stock of goods, groceries, etc., was set aside to him upon his application in the bankruptcy proceeding, and there was introduced in evidence an excerpt of the defendant's testimony in the former suit, as follows: "This stock of goods, I don't have but one place of business up at Buford at the time I went in bankruptcy. That's the stock of goods I claimed as a homestead in my bankruptcy proceedings." Thus it is made to sufficiently appear that the goods described in

the trover action were in fact set apart to the defendant, and thereupon the title vested, under the authorities hereinbefore cited, in the plaintiff. While there was no evidence as to the value by any witness, it is shown that in his bankruptcy proceeding the defendant himself set a value of $840.72 upon the stock of goods, and the jury was authorized to take this valuation into account in arriving at the value for the purpose of rendering a verdict in favor of the plaintiff upon his election, at the trial, to take a money verdict. While the verdict was rendered in the amount of $326.67, which was less than the agreed unpaid balance on the plaintiff's account, the defendant can not in these circumstances be heard to complain as to the lesser amount. *Godwin* v. *Albany Fertilizer Co.,* 99 *Ga.* 180 (25 S. E. 181); *Hicks* v. *Walker,* 17 *Ga. App.* 391 (2) (87 S. E. 152); *Westberry* v. *Hand,* 19 *Ga. App.* 529 (91 S. E. 930).

2. Special ground 1 of the motion for new trial assigns error on the refusal of the court to charge the jury, upon a timely written request to charge, as follows: "I charge you, gentlemen of the jury, that you should consider and determine the amount due and owing by defendant to plaintiff on the note dated January 1, 1934, with interest thereon to the date suit was filed, and also determine the value of the homestead property sued for at that time, and if you find the value of the homestead property sued for to have been greater on that date than the amount due on the note, then you should write a verdict in favor of the defendant." It is contended that inasmuch as under the provision in the note it was sought to convey only enough of the homestead property to pay the debt in full, and as it is shown that the value of the property was more than the amount of the debt, it is not determinable to what part of the property the plaintiff had title and that the description is insufficient for such purpose. Our attention is called to the fact that in the *Livingston* case, supra, the debt exceeded the value of the property assigned, and that in holding that the title passed this court pointed out that "no ruling is here made as to whether or not trover would lie had the value of the property set aside as an exemption been in excess of the amount of the note." The quoted statement by this court does not, we think, militate against our view that title passed in the present instance. While it is true that the only evidence as to the value of the homestead prop-

erty was that which was set upon it by the defendant in his bankruptcy proceeding, to wit, $840.27, which obviously was greater than the amount of the unpaid balance on the note, the exempted goods were adequately identified, in that they were shown to be those which were located in the store of the defendant at a described location in Buford, Georgia, and were, therefore, capable of seizure in a bail-trover action. Furthermore, the property was such as to be divisible for the purpose of making therefrom the amount of the verdict which was rendered in favor of the plaintiff. The amount of the plaintiff's demand against the defendant was less than the value set by the defendant upon the property set aside as a homestead exemption.

Assuming, as contended by the defendant, that as to such exempted property the parties became tenants in common, and that it is the general rule that one tenant in common can not bring an action of trover against his cotenant, an exception exists in some circumstances. In 62 C. J. 531, § 203, it is stated: "While there are some decisions in which a contrary conclusion has been reached, the weight of authority is that an action of trover may be maintained by one cotenant against another having exclusive possession of the property owned in common and who refuses plaintiff's demand to be admitted to his right as a cotenant claiming the entire ownership of the property. And where a tenant in common takes personal property against his cotenant's protest, claiming it as his own, it has been held that his cotenant may sue for conversion." In 54 C. J. 441, § 52, it is stated: "The doctrine above stated, that one joint owner can not sustain replevin against his coowner, applies more particularly to a single piece of property, or to things in their nature so far indivisible that the share of one is not susceptible of delivery without the whole. But it does not obtain where the property is absolutely alike in quality and value, and is readily divisible by measurement or weight. And where one repudiates the other's interest in property susceptible of division, or takes possession of the common property and converts it to his own use, the other may bring replevin for his share." In *Hall* v. *Page,* 4 *Ga.* 428, 435 (48 Am. D. 235), the court, after speaking of exceptions to the general rule, says: "The weight of authority is in favor of the exception, as last stated [sale of the whole property by one tenant], and it would seem too, that for the like rea-

son, any user of the joint property, which amounts to a disclaimer of the title of the cotenant, or which is inconsistent with his right of property, ought to constitute an additional exception." In *Roddy* v. *Cox*, 29 *Ga.* 298, 309 (74 Am. D. 64), it was said: "But it may be suggested that although, as a general rule, one joint tenant can not maintain trover against his cotenant; yet he may do so when, as in this case, the tenant in possession sets up his own adverse claim to the whole, to the exclusion of his cotenant. This also is true; but in such a case the recovery is founded on a *partition*. Neither joint tenant is entitled to recover from the other, under any circumstances, the entire property jointly owned, but only the value of his own interest in it." Thus it will be seen that the court would not have been justified in charging the jury that a verdict should be rendered in favor of the defendant in the event they found the value of the homestead property to be greater than the amount due the plaintiff, and the special ground is without merit.

3. The second special ground of the motion for new·trial, as conceded in the brief of counsel for the plaintiff in error, involves the same questions of law as dealt with in the preceding division of the opinion, and what is therein ruled disposes of it adversely to the contention of the plaintiff in error.

4. The court did not err, as contended in the third special ground of the motion, in admitting in evidence an extract from the testimony of the defendant on a former trial of the case. This testimony amounted to an admission that the stock of goods claimed by the defendant in his bankruptcy proceeding, and set aside for him as a homestead exemption, was the same stock of goods which he had in his store in Buford, Georgia, and thus identified the property as being that to which the plaintiff asserted title. Code, § 38-403. See also as to admissions of a party, *Bazemore* v. *Small Co.*, 9 *Ga. App.* 29 (3) (70 S. E. 261); *Hill* v. *Armour Fertilizer Works*, 21 *Ga. App.* 45 (5) (93 S. E. 511); *West End Park Co.* v. *Mitchell*, 175 *Ga.* 613 (1) (165 S. E. 628).

5. The fourth special ground complains that the court erred in admitting in evidence a bank pass-book of the plaintiff showing a deposit of $66.75 by it under date of April 19, 1934, the objection being that the entries therein had not been proved by the person making them and because the pass-book was shown to be one with

entries made by a person other than the one testifying. A pass-book of a depositor is his own property *(Harris* v. *Neuman,* 179 *Ga.* 879 (3), 177 S. E. 698), and is admissible in evidence as showing the fact of deposit but not conclusive as to the amount due a depositor. *Bank of Lawrenceville* v. *Rockmore,* 129 *Ga.* 582 (3) (59 S. E. 291); *Moore* v. *Citizens Bank,* 21 *Ga. App.* 183 (94 S. E. 90); *First National Bank* v. *Sanders,* 33 *Ga. App.* 615, 617 (127 S. E. 658). While a question of admissibility of a pass-book usually arises in a case between a depositor and a bank, we think that, inasmuch as in such a case it is admissible over objection that the bank's books or the testimony of one making the entries would be the best evidence, the pass-book was admissible here as corroborative of the testimony of the plaintiff's witness that the defendant made a payment of $50 on April 18, 1934, and that the next day it was deposited in bank with a check received from another source in the amount of $16.75, making a total of $66.75 deposited, and that he saw the teller make the entries in the pass-book.

6. The fifth special ground complains of the admission in evidence of a deposit slip of the plaintiff in the amount of $66.75, made up of the two items above mentioned, representing the deposit entered in the pass-book. The evidence showed that the deposit slip was prepared by the plaintiff's witness and delivered to the bank's teller who made the entries in the pass-book, and that later it was withdrawn from the bank under a trust receipt executed to the bank by the plaintiff. In these circumstances the deposit slip was admissible as corroborative of the testimony of the plaintiff's witness. See in this connection *Williamson* v. *Walker,* 187 *Ga.* 603, 608 (7) (1 S. E. 2d, 718).

7. Special ground 6 complains of the admission in evidence of a cancelled check for $16.75 signed by a third party, in favor of and endorsed by the plaintiff, and stamped paid as of April 20, 1934, the objection being that it was self-serving and that there was better proof of its genuineness than the testimony of the plaintiff's witness who identified it. This check was admissible as corroborative of the testimony for the plaintiff that with the $50 received from the defendant on April 18, 1934, the check in question was deposited on April 19, 1934, making a total of $66.75, as shown in the pass-book and on the deposit slip hereinabove mentioned.

8. In the seventh special ground of the motion error is assigned on the following excerpt of the charge of the court: "You are instructed, gentlemen, that in this case the plaintiff has elected to take a money verdict, and that is if the plaintiff recovers in this case it would be limited to the amount of balance claimed to be due on the purchase-price, whatever the evidence shows it to be, under the instructions given you and to be given you by the court. And if you find that it is entitled to recover under the election that the plaintiff has made, it would not be entitled in any event to recover a greater sum than you find to be due as the balance of the purchase price, principal and interest in one lump sum." It is contended that the charge constituted error in that it authorized the jury to find a verdict for the plaintiff for $400 and interest in one lump sum even though the highest proved value of the property between the date of conversion and the time of trial was less than the balance due the plaintiff. Inasmuch as the only evidence as to the value of the homestead property showed a value in excess of the balance due the plaintiff with interest, that is, $840.72, set by the defendant himself in his bankruptcy proceeding, the jury would have been authorized to find that the value of the property was in excess of the balance due the plaintiff with interest and not merely $326.67 as shown in their verdict. It can not be reasonably contended that the jury found the value between the date of the conversion and the time of the trial to be less than $326.67 under the facts of the case, and it can not be said that the defendant was harmed by the charge for any reason assigned. The jury would have been authorized to return a verdict for $400 and interest in one lump sum, according to the value set by the defendant, and no cause for reversal is shown.

*Judgment affirmed. Stephens, P. J., concurs.*

FELTON, J., dissenting. The plaintiff's title is based on an assignment of a homestead exemption. If the assignment is made valid and certain by the setting apart of a homestead it becomes a sale. It is elementary that the identification of the thing sold is essential to a valid contract of sale. Code § 96-101. The assignment in this case was of a sufficient amount of the property set apart as a homestead as would be necessary to pay the plaintiff's debt. Obviously the only event which could possibly make such a description of the property assigned certain and definite would

be the setting apart of exactly enough property to pay the debt or less than enough to pay it; in other words, that amount which would conclusively show that the assignment covered the entire property set apart as a homestead. If the amount of property set apart was more than the plaintiff's debt there is no identification of the property assigned because the property assigned can not be separated from the mass. What is here said applies peculiarly in an action in trover. See *Mumford* v. *Stribling, 28 Ga. App.* 292 (111 S. E. 224), and cit. It was incumbent on the plaintiff to show that he had a valid assignment, and title, to the property sued for. As to the stock of goods, there was no evidence which would have authorized a jury to find that the value of the property set apart as a homestead was equal to or less than the amount of plaintiff's debt. I therefore dissent.