## ULMAN, MAGILL & JORDAN WOOLEN CO. *v.* MAGILL.

The statute law of Missouri, providing that where a married woman signs a promissory note as surety for her husband she is liable for the amount of the note, will not be enforced in this State in a case where such married woman, living in Missouri, signs in Missouri a promissory note as surety for her husband, the contract to be performed in Missouri, and while she is still domiciled in Missouri she is sued by attachment in Georgia, and the attachment is executed by seizing property of hers located in Georgia.

No. 3435. May 15, 1923.

Question certified by Court of Appeals (Case No. 13794).

*Charles Fensky* and *F. W. Copeland,* for plaintiff.

*Maddox & Doyal,* for defendant.

RUSSELL, C. J. The transcript of the record in this case was transmitted to this court with the following certificate:

" The Court of Appeals desires instruction from the Supreme Court upon the following question, a determination of which is necessary for the decision of this case: Will the statute law of Missouri, providing that where a married woman signs a promissory note as surety for her husband she is liable for the amount of the note, be enforced in this State, in a case where a married woman living in Missouri signs in Missouri a promissory note as

surety for her husband, the contract to be performed in Missouri, and while she is still domiciled in Missouri she is sued by attachment in Georgia, and the attachment is executed by seizing property of hers located in Georgia?"

Article 3, sec. 11, par. 1, of our constitution (Civil Code, § 6456) provides: "All property of the wife at the time of her marriage, and all property given to, inherited, or acquired by her, shall remain her separate property, and not be liable for the debts of her husband." Section 2993 of the Civil Code of 1910 provides as follows: "All the property of the wife at the time of her marriage, whether real, personal, or choses in action, shall be and remain the separate property of the wife; and all property given to, inherited, or acquired by the wife during coverture shall vest in and belong to the wife, and shall not be liable for the payment of any debt, default, or contract of the husband." It is provided by section 3007 of the Civil Code that "While the wife may contract, she cannot bind her separate estate by any contract of suretyship, nor by any assumption of the debts of her husband, and any sale of her separate estate, made to a creditor of her husband in extinguishment of his debts, shall be absolutely void." Considering the provisions of the constitution of 1877, the code sections stated, and the numerous cases decided in this State in pursuance of our law, it may be safely asserted that there is no matter of public policy more firmly fixed in this State than that which outlaws a contract of suretyship on the part of a wife in behalf of her husband, or the payment by the wife of any debt of her husband from the proceeds of her separate estate. An instance which suffices to illustrate the potency and extent of this public policy is the fact that in this State a wife may recover her money which has been paid to a creditor of her husband in extinguishing his debt, even in a cash sale, with her funds (*Parrott* v. *Smith,* 135 *Ga.* 329 (3), 69 S. E. 552) ; and where a wife executes a deed conveying her real estate to a creditor of her husband, she may, upon proof of the fact, proceed to rescind and annul the contract successfully and reassert her former ownership against the grantee or even against holders under the grantee with notice of defect in the consideration (*Taylor* v. *Allen,* 112 *Ga.* 330, 37 S. E. 408; *Bond* v. *Sullivan,* 133 *Ga.* 160, 65 S. E. 376, 134 Am. St. R. 199), or by proceeding for a cancellation of

the deed of conveyance (*Gilmore* v. *Hunt,* 137 Ga. 272, 72 S. E. 364).

Without citing decisions of this court, it may be broadly stated to be the well-settled policy of this State that the separate estate of the wife, no matter how acquired, shall not be subject to the payment of her husband's debt, and that she shall not become his surety any more than she may become the surety of another person. The funds of the wife shall not be subject to the payment of her husband's debts under any circumstances, whether primarily or as surety. Our laws and the public policy upon which they are based arise naturally from the legal status of the wife as declared in section 2992 of the Civil Code, which stands intact so far as the marriage relation is concerned, and is unaffected by the married woman's act of 1866 or the nineteenth amendment to the Federal constitution. That section, so far as pertinent, declares that the wife's "legal civil existence is merged in the husband, except so far as the law recognizes her separately, either for her own protection, or for her benefit, or for the preservation of public order."

The question asked by the Court of Appeals is so sweeping that it resolves itself into a question as to whether there is any conceivable instance under which the law of Georgia will aid in the enforcement of an obligation of suretyship assumed by a wife in behalf of her husband; and assuming even that the inquiry were in this broad form, we would be constrained to answer in the negative. It is well recognized that the laws of foreign States (even though they be sister States within the Union) are enforced solely by reason of comity. No State law has extraterritorial jurisdiction. "Comity of the States" (as defined by section 9 of the Civil Code of 1910) "will be enforced, unless restrained by the General Assembly, so long as its enforcement is not contrary to the policy or prejudicial to the interests of this State." A contract of suretyship by the wife for her husband contravenes the constitution and statutes of this State as well as the repeated decisions of this court; and even though the matter sued on be an enforceable contract in Missouri, it can not and will not be enforced in the courts of Georgia. Comity is not a right but a courtesy. "In considering the question of comity it should always be borne in mind that the recognition of foreign laws can not be claimed

as a right, but only as a favor or courtesy. Comity, being voluntary and not obligatory, rests in the discretion of the forum, governed by certain more or less widely recognized rules. Thus while ordinarily, by comity, a foreign citizen or a foreign corporation may invoke the aid of the courts of the forum, at the same time it should be borne in mind that a State or a nation in its sovereign capacity can exercise the fullest authority over its tribunals, and prohibit citizens of other States from suing in them, unless there is some superior power by which its authority in this respect is circumscribed." 5 R. C. L. 910, § 4. The provision of the Federal constitution goes no further than to guarantee to the citizens of each state all of the privileges and immunities of citizens in the several States. In the recognition and enforcement of foreign laws the courts are slow to overrule the positive law of the forum. Green *v.* VanBuskirk, 72 U. S. (5 Wall.) 307 (18 L. ed. 599). " And they will never give effect to a foreign law . . when the enforcement of the foreign law would contravene the persistent policy of the law of the forum, whether that policy be refuted in statutory enactment or not." Green *v.* VanBuskirk, supra; *Benton* v. *Singleton,* 114 *Ga.* 548 (40 S. E. 811, 58 L. R. A. 181). 5 R. C. L. 911-912, § 5, and cit. As stated in Hervey *v.* Rhode Island Locomotive Works, 93 U. S. 664 (23 L. ed. 1003), " The liability of property to be sold under legal process, issuing from the courts of the State where it is situated, must be determined by the law of that State rather than the law of the jurisdiction where the owner lives." In the Hervey case is was held by the Supreme Court of the United States that the doctrine of comity must yield to the law of land, and hence the law of another State has no place when it conflicts with the law of the forum or the settled current of its judicial decisions. " Foreign laws will not be given effect when to do so would be contrary to the settled public policy of the forum." 12 C. J. 439, § 15, and cit.

Without multiplying authorities we think that the answer to the question propounded by the Court of Appeals is controlled by the ruling of this court in *Sally* v. *Bank of Union,* 150 *Ga.* 281 (103 S. E. 460), in which numerous authorities are cited by Mr. Justice Gilbert. Learned counsel for plaintiff in error relies upon the decision in *Hager* v. *National Bank,* 105 *Ga.* 116 (31 S. E.

141), but that case is easily distinguished by its facts from those stated in the question of the Court of Appeals and from the *Sally* case; and yet nothing is held in that case which in any way conflicts with the views of the court as herein expressed. In fact, upon careful reading of the first headnote and of the opinion, it appears to us to be authority favorable to the ruling of this court. in this case.

The answer to the question propounded must be in the negative.

*All the Justices concur.*

HINES, J., concurs specially in the result, under the ruling in *Sally* v. *Bank of Union,* 150 *Ga.* 281, without agreeing to all that is said in the opinion.