S03Q0400. CONVERGYS CORPORATION v. KEENER.
(582 SE2d 84)

THOMPSON, Justice.

James A. Keener sued his former employer, Convergys Corporation (Convergys) in a diversity action in the United States District Court for the Southern District of Georgia. Keener sought a declaratory judgment that a nondisclosure and noncompetition agreement he had executed with Convergys was overbroad and unenforceable under Georgia law; an injunction preventing Convergys from enforcing the agreement; and damages for tortious interference with his employment at one of Convergys' competitors. Convergys counterclaimed for an injunction enforcing the agreement; alternatively, for restitution of the consideration paid to Keener; and for attorney fees. Although the agreement contained a choice of law selection clause declaring that it be governed by the law of the state of Ohio, the district court refused to give effect to that provision on the basis that the application of Ohio law would contravene the public policy of Georgia. Concluding that the agreement is unenforceable under Georgia law, the district court granted Keener summary judgment, permanently enjoined Convergys from enforcing the agreement, and dismissed Convergys' counterclaim.

Convergys appealed to the United States Court of Appeals for the Eleventh Circuit, which certified the following question of Geor-

gia law to this Court:

> Whether a court applying Georgia conflicts of laws rules
> [must] follow the language of Restatement (Second) of Con-
> flict of Laws § 187 (2) and, therefore, first must ascertain
> whether Georgia has a "materially greater interest" in
> applying Georgia law, rather than the contractually selected
> forum's law, before it elects to apply Georgia law to invali-
> date a non-compete agreement as contrary to Georgia public
> policy.

Because the Restatement (Second) of Conflict of Laws has never been
adopted in Georgia, and because we continue to refuse to enforce con-
tractual rights which contravene the policy of Georgia, we answer in
the negative.

In 1984 Keener began working for Convergys' predecessor com-
pany Cincinnati Bell Information Systems (CBIS), an Ohio corpora-
tion, and remained employed with CBIS through its evolvement into
what is now Convergys. In 1995 Keener executed the nondisclosure
and noncompetition agreement with CBIS as a condition of his con-
tinued employment, and he was granted stock options as considera-
tion for the agreement. The agreement contained time, subject mat-
ter and geographic restrictions, as follows:

> Employee agrees for two years following termination of
> employment for any reason (or if this period is unenforce-
> able by law, then for such period as shall be enforceable), not
> to engage in any business offering services related to the
> business of the Company at the time of termination in any
> capacity which requires or utilizes the skill, training or
> knowledge acquired by Employee while employed by the
> Company, whether such capacity be as a principal, partner,
> joint venturer, agent, employee, salesperson, consultant,
> director or officer, where such position would involve
> Employee in any business activity in competition with the
> Company or in any business that provides billing and/or cus-
> tomer care systems to third parties engaged in the commu-
> nication business (including wireless, wireline and cable
> communication businesses). This restriction will be limited
> to the geographical area where the Company is doing busi-
> ness at the termination of employment or to such other geo-
> graphical area as a court shall find reasonably necessary to
> protect the goodwill and business of the Company.

In 2001 Keener voluntarily left Convergys and relocated to Geor-
gia to accept a position with H.O. Systems, a competitor of Con-

vergys, located in Savannah. Later that year, while Keener was making a sales call for H.O. Systems, he happened to cross paths with a Convergys salesperson. That day, Keener received a call from Convergys' legal department reminding him of the noncompetition agreement. Subsequently, both Keener and H.O. Systems received letters demanding that Keener cease his employment with H.O. Systems. Eventually, Keener and H.O. Systems terminated their employment relationship by mutual agreement.

The issue presented by this appeal was squarely before this Court in *Nasco, Inc. v. Gimbert*, 239 Ga. 675 (2) (238 SE2d 368) (1977). There, an employer brought suit in Georgia, seeking injunctions and damages against a former employee based upon noncompetition, nonsolicitation, and nondisclosure covenants in an employment agreement. The agreement specified that it would be construed according to Tennessee law. However, the trial court applied the law of Georgia and refused to enforce the covenants, granting summary judgment to the employee defendant. An appeal was taken to this Court. After first ascertaining that there were significant contacts with the State of Georgia, such that the choice of our law was neither arbitrary nor constitutionally impermissible, see *Allstate Ins. Co. v. Hague*, 449 U. S. 302 (101 SC 633, 66 LE2d 521) (1981), this Court affirmed, holding that:

> The law of the jurisdiction chosen by parties to a contract to govern their contractual rights will not be applied by Georgia courts where application of the chosen law would contravene the policy of, or would be prejudicial to the interests of, this state. [Cits.] Covenants against disclosure, like covenants against competition, affect the interests of this state, namely the flow of information needed for competition among businesses, and hence their validity is determined by the public policy of this state. [Cits.]

*Nasco*, supra at 676 (2).

The rationale for this decision was shown to be former Georgia Code § 102-110 (now OCGA § 1-3-9) ("courts shall enforce [the comity of states], unless restrained by the General Assembly, so long as its enforcement is not contrary to the policy or prejudicial to the interests of this state"), and this Court's holding in *Ulman &c. Woolen Co. v. Magill*, 155 Ga. 555 (117 SE 657) (1923). The *Ulman* decision simply applied the foregoing Code section in reaching the conclusion that Georgia would not enforce a Missouri contract that violated public policy in this state. On this principle, the cases are legion. E.g., *Hulcher Svcs. v. J. Corman R. Co.*, 247 Ga. App. 486 (2) (543 SE2d 461) (2000) (selection of choice of Texas law will not be followed

where it flagrantly contravenes the public policy of Georgia); *Federal Ins. Co. v. Nat. Distributing Co.*, 203 Ga. App. 763 (1) (417 SE2d 671) (1992) (Restatement approach has been rejected in Georgia and the traditional method retained); *Enron Capital &c. v. Pokalsky*, 227 Ga. App. 727 (3) (490 SE2d 136) (1997) (although the parties may have chosen the law of a foreign jurisdiction to govern, a Georgia court will not enforce the contract if it is "particularly distasteful"); *Merrill Lynch, Pierce, Fenner & Smith v. Stidham*, 658 F2d 1098, 1100 fn. 5 (5th Cir. 1981); *Barnes Group v. Harper*, 653 F2d 175, 178 fn. 4 (5th Cir. Unit B 1981); *Marketing and Research Counselors v. Booth*, 601 FSupp. 615 (N.D. Ga. 1985).

We reaffirmed our commitment to the traditional choice of law rules in *General Tel. Co. &c. v. Trimm*, 252 Ga. 95 (311 SE2d 460) (1984). Again by way of certified question from the Eleventh Circuit, this Court was faced with the question of whether Georgia adhered to the traditional rule of lex loci contractus[1] in cases involving conflicts of law, or if Georgia had adopted the Restatement (Second) of Conflict of Laws § 188 (1971) "center of gravity test"[2] to determine which state law governs contractual disputes. We expressly rejected the Restatement center of gravity test noting that it "is neither less confusing nor more certain than our traditional approach." *Trimm*, supra at 96.

However, in *Nordson Corp. v. Plasschaert*, 674 F2d 1371 (11th Cir. 1982), the Eleventh Circuit reached a contrary conclusion in reviewing a case involving Georgia choice of law rules. The *Nordson* court determined that Georgia would honor a choice of law provision in a covenant not to compete which provided that the agreement would be governed by Ohio law, even though the terms of the covenant would not be enforceable under Georgia law. Recognizing that "[e]ven when the contract provides for a choice of law under which the covenant would be enforceable, Georgia may elect not to enforce it," id. at 1374, the *Nordson* court nonetheless looked to the "materially greater interest" test embodied in the Restatement (Second) of Conflict of Laws § 187 (2) (1971),[3] and then conducted its analysis

---

[1] "Under this approach, '(contracts) are to be governed as to their nature, validity, and interpretation by the law of the place where they were made, except where it appears from the contract itself that it is to be performed in a State other than that in which it was made, in which case . . . the laws of that sister State will be applied.' [Cit.]" *Trimm*, supra at 95.

[2] "The center of gravity theory (also known as the 'grouping of contracts' theory) requires the court to examine five factors in order to determine which state law to apply in contract cases involving choices of law. These factors include (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. Restatement (Second) of Conflict [of Laws] § 188 (1971)." *Trimm*, supra at 96.

[3] The Restatement (Second) of Conflict of Laws § 187 (2) provides:

based on the Restatement factors. In so doing, the Eleventh Circuit claimed to be guided by this Court's decision in *Nasco*. However, this Court did not adopt § 187 (2) of the Restatement in *Nasco*; the single reference to that provision was prefaced with the introductory signal "see,"[4] and followed in a separate sentence the citation of authority which directly supported the proposition that Georgia courts will not apply chosen law which would contravene the policy of, or would be prejudicial to the interests of, this state, namely, OCGA § 1-3-9 and *Ulman &c. Woolen Co. v. Magill*, supra. *Nasco*, supra at 676. Thus, *Nordson* erroneously interpreted *Nasco* and is in direct conflict with that case.[5] The Eleventh Circuit perpetuated the error in *Bryan v. Hall Chemical Co.*, 993 F2d 831 (11th Cir. 1993), by relying on its erroneous holding in *Nordson*.

In *Trimm*, supra at 96, we stated that we would adhere to the traditional rules until "it becomes clear that a better rule exists." We recognize that some of our sister states have developed analyses which seem to be derived from the Restatement provisions.[6] But despite the adoption of some very complex rules in these jurisdictions, in actuality it does not appear that these rules are outcome determinative. Instead, the cases seem to turn on a court's interpretation of its own public policy considerations. Therefore, until we are convinced that there is a better approach, Georgia will continue to adhere to the traditional conflicts of law rules.

*Question answered. All the Justices concur.*

SEARS, Presiding Justice, concurring.
Although I am constrained by OCGA § 1-3-9 to concur in the

---

(2) The law of the State chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188 (Law Governing in Absence of Effective Choice by the Parties), would be the state of the applicable law in the absence of an effective choice of law by the parties.

[4] An introductory signal is *not* to be used if the cited authority directly supports the stated proposition. The Harvard Law Review Association, the Bluebook: A Uniform System of Citation (2000), § 1.2 (a).

[5] The district court recognized the error: "*Nordson's* reasoning itself is questionable . . . '(t)he *Nordson* decision is in direct conflict with . . . *Nasco*.'" *Keener v. Convergys Corp.*, 205 FSupp2d 1374 (S.D. Ga. 2002). See also *Booth*, supra at 616.

[6] E.g., *Raflo v. United States*, 157 FSupp2d 1 (D.D.C. 2001); *Application Group v. Hunter Group*, 61 Cal.App.4th 881 (1st Dist. 1998); *Fu v. Fu*, 733 A2d 1133 (N.J. 1999); *State Farm Mut. Ins. Co. v. Estate of Simmons*, 417 A2d 488, 493 (N.J. 1980).

judgment of the majority opinion,[7] I write separately to urge our General Assembly to adopt the rule of the Restatement (Second) of Conflict of Laws § 187 (2), concerning when the courts of this State will honor the law of another state that the parties to a contract have chosen to govern their contractual relationship.[8] The Restatement rule has several advantages over the more restrictive rule represented by OCGA § 1-3-9. It recognizes that "persons are free within broad limits to determine the nature of their contractual obligations," and, with regard to multistate transactions, it fosters the "[p]rime objectives of contract law" "to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract."[9] In addition, the Restatement rule provides adequate protection to the policies of this state by providing that if Georgia has a "materially greater interest" in the resolution of the issue in question than the state chosen by the parties and that if the policy of the chosen state is contrary to the fundamental policy of this state, this state may apply its own laws to the issue in question.

For the foregoing reasons, I concur in the majority opinion.

I am authorized to state that Chief Justice Fletcher and Justice Carley join in this concurrence.

DECIDED MAY 19, 2003 —
RECONSIDERATION DENIED JULY 11, 2003.

*Callaway, Braun, Riddle & Hughes, Dana F. Braun*, for appellant.

*Hunter, Maclean, Exley & Dunn, Wade W. Herring II, Colin A. B. McRae*, for appellee.

---

[7] In this regard, under the principles set forth in *Allstate Ins. Co. v. Hague*, 449 U. S. 302 (101 SC 633, 66 LE2d 521) (1981), I see no constitutional impediment to the application of Georgia law in this case.

[8] Under § 187 (2), the law chosen by the parties will govern unless
(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state that has a materially greater interest than the chosen state. . . .

[9] Restatement (Second) of Conflict of Laws § 187, Comment e.