[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 21, 2003
THOMAS K. KAHN
CLERK

_____

No. 02-11324

_____

D. C. Docket No. 01-00182-CV-4

JAMES A. KEENER,

Plaintiff-Counter-
Defendant-Appellee,

versus

CONVERGYS CORPORATION,

Defendant-Counter-
Claimant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(August 21, 2003)

Before BIRCH and BLACK, Circuit Judges, and PROPST[*], District Judge.

BIRCH, Circuit Judge:

_____

[*]  Honorable Robert B. Propst, United States District Judge for the Northern District of Alabama, sitting by designation.

In this appeal, we apply the law as certified by the Supreme Court of Georgia and affirm the district court's grant of summary judgment, which declared a non-competition agreement ("NCA") between Convergys and Keener unenforceable under Georgia law. However, we hold that the district court abused its discretion when it enjoined Convergys from seeking to enforce the NCA against Keener in any court in the world. We also reverse the portion of the judgment that dismissed Convergys's counterclaims.

## I. BACKGROUND

To reach the merits of Convergys's appeal regarding the enforceability of the NCA, we concluded that we must first decide whether the district court properly elected to apply Georgia law to the agreement, instead of Ohio law, as was contracted to by the parties to the NCA. Because this issue involved what we considered a dispute within Georgia conflicts of law jurisprudence, we certified the following question to the Supreme Court of Georgia:

> WHETHER A COURT APPLYING GEORGIA CONFLICT OF
> LAWS RULES FOLLOWS THE LANGUAGE OF RESTATEMENT
> (SECOND) CONFLICT OF LAWS § 187(2) AND, THEREFORE,
> FIRST MUST ASCERTAIN WHETHER GEORGIA HAS A
> "MATERIALLY GREATER INTEREST" IN APPLYING
> GEORGIA LAW, RATHER THAN THE CONTRACTUALLY
> SELECTED FORUM'S LAW, BEFORE IT ELECTS TO APPLY
> GEORGIA LAW TO INVALIDATE A NON-COMPETE
> AGREEMENT AS CONTRARY TO GEORGIA PUBLIC POLICY.

Keener v. Convergys Corp., 312 F.3d 1236, 1241 (11th Cir. 2002) (per curiam).

The Supreme Court of Georgia answered in the negative. Convergys Corp. v. Keener, 582 S.E.2d 84, 87 (Ga. 2003). The court noted the conflicting law found in our circuit: Nordson Corp. v. Plasschaert, 674 F.2d 1371(11th Cir. 1982), and Bryan v. Hall Chemical Company, 993 F.2d 831 (11th Cir. 1993). Deeming the decisions "erroneous" interpretations of Georgia law, the Supreme Court of Georgia made it clear that "until 'it becomes clear that a better rule exists,'"[1] it continues to adhere to traditional conflicts of law rules. Convergys, 582 S.E.2d at 87 (citing General Tel. Co. v. Trimm, 252 Ga. 95, 96, 311 S.E.2d 460, 462 (1984)). We acknowledge the Supreme Court of Georgia's clarification of the rule and apply it here.

Accordingly, the rule is that

[a]fter first ascertaining that there were significant contacts with the State of Georgia, such that the choice of [Georgia] law was neither arbitrary nor constitutionally impermissible, see Allstate v. Hague, 449 U.S. 302, 101 S. Ct. 633 . . . (1981) . . . "[t]he law of the jurisdiction chosen by parties to a contract to govern their contractual rights will not be applied by Georgia courts where application of the chosen law would contravene the policy of, or would be prejudicial to the interests of, this state. Covenants against disclosure, like

---

[1] There is indication from the Supreme Court of Georgia that the better rule may in fact be the one found in Restatement (Second) of Conflict of Laws § 187(2). See Convergys, 582 S.E.2d at 87-88 (Sears, J., concurring). The concurrence urges the General Assembly of Georgia to adopt § 187(2) because of several advantages listed therein, including the protection of "justified expectations." Convergys, 582 S.E.2d at 87 (quotation omitted).

3

covenants against competition, affect the interests of this state, namely the flow of information needed for competition among businesses, and hence their validity is determined by the public policy of this state."

Convergys, 582 S.E.2d at 85-86 (quoting Nasco, Inc. v. Gimbert, 238 S.E.2d 368, 369 (Ga. 1977) (citations omitted in original)).

## II. DISCUSSION

We now turn to the appeal before us: (1) whether Georgia law applies because the NCA violates Georgia public policy, and, if so, whether the NCA is unenforceable under Georgia law; (2) whether the district court abused its discretion in permanently enjoining the enforcement of the NCA worldwide; and (3) whether the district court properly granted summary judgment for Keener on Convergys's counterclaims for restitution, provided the NCA was unenforceable, and for an injunction prohibiting Keener from working for H.O. Systems, a competitor, because he had access to Convergys's trade secrets that he would use during the course of his employment.

A. Summary Judgment

We review a district court's legal conclusions underlying a decision to grant injunctive relief de novo. Major League Baseball v. Crist, 331 F.3d 1177, 1183 (11th Cir. 2003). We agree with the district court's determination that the application of Georgia law is not arbitrary or constitutionally impermissible

4

because Convergys would be attempting to enforce the NCA against Keener, who is living and working in Georgia, where the effects would be felt.[2] Applying Georgia conflicts of law rules, the district court assessed whether the NCA was contrary to Georgia public policy and, finding that it was, refused to apply Ohio law. Keener v. Convergys Corp., 205 F. Supp. 2d 1374, 1377-80, 1381-82 (S.D. Ga. 2002) (citing, inter alia, Hulcher Svcs., Inc. v. R.J. Corman R.R. Co., L.L.C., 543 S.E.2d 461, 465 (Ga. App. 2000) (refusing to honor choice of law clauses if chosen law would contravene Georgia public policy); Nasco Inc., 238 S.E.2d at 369 (same); Troup County Elec. Membership Corp. v. Georgia Power Co., 191 S.E.2d 33, 36 (1972) (citing Georgia State Constitution provision for public policy disfavoring restrictions of right of persons attempting to do business with the public)).

Georgia law applies strict scrutiny to restrictive covenants in employment contracts. New Atlanta Ear, Nose & Throat Assocs., P.C. v. Pratt, 560 S.E.2d 268, 270-71 (Ga. App. 2002). Recognizing that Georgia does not employ the "blue pencil" doctrine of severability, the district court deemed the NCA overbroad

---

[2] Although the application of Georgia law is not arbitrary, it does not follow necessarily that it is the preferred law. We acknowledge that the contract was entered into in Ohio, the contract selected Ohio law, and it was the expectation of both parties that Ohio law would apply. Ohio employs the blue pencil doctrine and an otherwise overbroad non-compete agreement would be tailored in scope under Ohio law to the extent it is enforceable. Enonomou v. Physicians Weight Loss Ctrs, 756 F. Supp. 1024, 1031 (N.D. Ohio 1991) (citing Raimonde v. Van Vlerah, 325 N.E.2d 544 (Ohio 1975)).

because its prohibition of working for *any* competitor necessarily included any similar company worldwide because Convergys is an international company. Keener, 205 F. Supp. 2d at 1380 (citing Advance Tech. Consultants, Inc. v. RoadTrac, L.L.C., 551 S.E.2d 735, 738-39 (Ga. App. 2001) (invalidating entire NCA containing an overbroad restriction), and Morgan Stanley DW, Inc. v. Frisby, 163 F. Supp. 2d 1371, 1377-78 (N.D. Ga. 2001) (applying Georgia law and refusing to "blue pencil" a restrictive covenant)). Furthermore, the geographic reach of the NCA was indeterminate until the date of termination, thereby invalidating the NCA because Georgia law invalidates "territorial restrictions that change and expand during the course of the agreement." Id. at 1381 (quoting New Atlanta Ear, Nose & Throat Assocs., 560 S.E.2d at 272)). Third, the district court found the non-solicitation component of the NCA to be "likewise unenforceable," for reasons of overbreadth, lack of definite geographic limitations, and blanket restrictions against soliciting any customers, whether a prior relationship existed or not. Id. at 1382 (quoting Capricorn Sys., Inc. v. Pednekar, 546 S.E.2d 554, 557-58 (Ga. App. 2001)); but see W.R. Grace & Co., Dearborn Div., Conn. v. Mouyal, 982 F.2d 480, 481 (11th Cir. 1993) (applying law as certified by the Georgia Supreme Court and holding that a non-solicitation clause need not contain a geographical restriction so "long as the scope of restriction is defined in a manner that is explicit,

6

does not require the restricted employee to speculate as to the bounds of the restriction, and does not overreach"). Accordingly, the district court found the NCA unenforceable "in toto, thus entitling Keener to declaratory and injunctive relief." Keener, 205 F. Supp. 2d at 1382.

Based on the district court's thorough analysis and application of Georgia law, we affirm the district court's order granting summary judgment in favor of Keener. The NCA was contrary to Georgia public policy, Georgia law therefore applied, and the NCA was unenforceable under Georgia law due to its overbreadth.

B. Permanent Injunction

We review the district court's grant of injunctive relief for abuse of discretion. Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr., 97 F.3d 492, 496 (11th Cir. 1996). Permanent injunctive relief requires three elements: (1) success on the merits; (2) continuing irreparable injury; and (3) no adequate remedy at law. Newman v. Alabama, 683 F.2d 1312, 1319 (11th Cir. 1982). Injunctive relief should be limited in scope to the extent necessary to protect the interests of the parties. See Gibson v. Firestone, 741 F.2d 1268, 1273 (11th Cir. 1984) (constitutional violation context); see also Soc'y for Goodwill to Retarded Children, Inc. v. Cuomo, 737 F.2d 1239, 1251 (2d Cir. 1984) ("Injunctive relief should be narrowly tailored to fit the specific legal violations

adjudged."); Consolidation Coal Co. v. Disabled Miners of S. W. Va., 442 F.2d 1261, 1267 (4th Cir. 1971) (An injunction "should be tailored to restrain no more than what is reasonably required to accomplish its ends.").

Keener prevailed on summary judgment when the district court declared that the NCA is unenforceable under Georgia law, thus entitling him to injunctive relief if he demonstrated irreparable harm and that there was no adequate remedy at law.[3] Finding the circumstances amenable to injunctive relief, the district court awarded it to Keener by permanently enjoining Convergys from attempting to enforce the NCA "in any court worldwide." Keener, 205 F. Supp. 2d at 1382. Convergys contests the equity of the result, claiming that Keener should not be permitted the protection of the injunction because he intentionally misrepresented to Convergys the nature of his new employment when he left Convergys in order to avoid their enforcement of the NCA in Ohio by applying Ohio law. Convergys decries the fact that the district court did not consider this uncontested fact in its order granting injunctive relief. In addition, Convergys argues that the injunction should be limited to include Georgia only.

We hold that the district court abused its discretion because it did not tailor the injunction to include Georgia only. The NCA is unenforceable under Georgia

_____

[3] The parties do not dispute the presence of these elements or the availability of injunctive relief because of their absence.

8

law, however, because the public policy of Georgia is hostile toward any limitations on competition, and it will apply its own law to any agreements against its public policy even if the parties contracted in another state with the understanding that the other state's law would apply. For example, Ohio employs the blue pencil doctrine; therefore, if the NCA were overbroad under Ohio law, the court would be empowered to modify the agreement to enforce it and protect the interests of the parties involved. Georgia law does not offer that flexibility. Georgia of course is entitled to enforce its public policy interests within its boundaries and, in the circumstance that litigation over an NCA is initiated in Georgia, it may employ that public policy to override a contracted choice of law provision. However, Georgia cannot in effect impute its public policy decisions nationwide - the public policy of Georgia is not that everywhere. To permit a nationwide injunction would in effect interfere both with parties' ability to contract and their ability to enforce appropriately derived expectations.

Moreover, Keener is not without fault because he misrepresented to Convergys his next occupation as a stockbroker. He admitted doing this to avoid Convergys's enforcement of the NCA. That misrepresentation, though not on its own egregious, when combined with Keener's preemptive declaratory suit, did result in depriving Convergys of the opportunity of enforcing the NCA in Ohio,

9

under Ohio law, as provided by the NCA. Keener, as a consequence of his misrepresentation, avoided enforcement by Convergys in Ohio and benefitted in electing a jurisdiction that is hostile to NCAs.

The NCA is unenforceable under Georgia law, in Georgia. The district court extended the injunction beyond a reasonable scope by permitting the public policy interests of Georgia to declare an NCA unenforceable nationwide, when its law was not intended by the parties to apply in the first place. Accordingly, the injunction should be modified to preclude Convergys from enforcing the NCA in Georgia only.

C. Convergys's Counterclaim

Convergys appeals the dismissal of its counterclaims for (1) restitution for the stock options tendered to Keener because of failure of consideration of the NCA, if unenforceable, and (2) Keener's violation of the Ohio and Georgia Trade Secret Acts. The district court indicated in an order entered subsequent to the notice of appeal that Convergys's second claim had not been dismissed by the summary judgment order. Accordingly, we will not address its merits.

Convergys argues that Keener, as the moving party for summary judgment, never demonstrated an absence of evidence to support Convergys's case and, therefore, did not carry his burden to support the dismissal of its claims.

10

Appellant's Br. at 38 (citing <u>Danskine v. Miami Dade Fire Dep't</u>, 253 F.3d 1288, 1293 (11th Cir. 2001)). A review of the record demonstrates that Keener, in his motion for summary judgment, argued only the merits of his claim for declaratory and injunctive relief. Other than a general claim for summary judgment on Convergys's counterclaim in the conclusion of his motion, Keener only references Convergys's counterclaim for restitution in a footnote, claiming that he did not have unclean hands, but deferred to the court's discretion whether he should give back the income from stock options that he received as consideration for signing the NCA. Keener otherwise did not proffer a legal or factual basis supporting his motion for summary judgment on Convergys's counterclaim.

The district court dismissed Convergys's counterclaim for restitution because it deemed it abandoned when Convergys failed to raise any argument on the claim. <u>Keener</u>, 205 F. Supp. 2d at 1382. In addition, the court cited <u>Liautaud v. Liautaud</u>, 221 F.3d 981, 989 (7th Cir. 2000), for the proposition that a claim for unjust enrichment is not recoverable when the underlying contract is void as against public policy. That decision, however, was rendered pursuant to Illinois law. The district court's order does not contain the requisite analysis of Convergys's counterclaim to support its dismissal under Georgia law. To the contrary, it was incumbent upon Keener to demonstrate first the legal and factual

bases supporting summary judgment of Convergys's counterclaim. <u>Celotex Corp.</u> <u>v. Catrett</u>, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552-53 (1986). Keener did neither; instead, he focused his efforts on his own claim. His success does not render Convergys's claims non-existent.

Convergys's counterclaim, which was pled in the alternative, was factually triggered when the district court found the NCA to be unenforceable. The viability of that claim was not litigated by the parties before the district court. Accordingly, the district court's dismissal of that counterclaim is reversed and remanded for proceedings consistent with this opinion. We anticipate the first counterclaim will now join the second counterclaim, which apparently was not dismissed, and both will be properly before the district court.

### III. CONCLUSION

Given the clarification by the Supreme Court of Georgia on its conflicts of law rules, we are able to address the balance of Convergys's appeal. Because Georgia public policy is offended by the NCA, Georgia law applies to render the NCA unenforceable, as properly held by the district court. It was not an abuse of discretion to enjoin the enforcement of the NCA in Georgia, while Keener remains a resident of Georgia. However, the breadth of the injunction, without such limitation, under the facts of this case, constitutes an abuse of discretion and that

12

portion of the injunction is reversed. In addition, Convergys's counterclaims either were not addressed by the district court and not before us, or disposed of without proper litigation of the issues before the district court. The portion of the order dismissing the counterclaim is reversed and remanded for further proceedings. Accordingly, the judgment of the district court is

**AFFIRMED IN PART AND REVERSED IN PART.**