### Patricia JONES, individually and for all other persons similarly situated, Plaintiff,

v.

### PEOPLE'S HERITAGE BANK, now known as Banknorth, N.A., Amerifee, LLC d/b/a Orthodontist Fee Plan, Dental Fee Plan, Vision Fee Plan and Cosmetic Fee Plan, Defendants.

#### No. CV103–096.

United States District Court, S.D. Georgia, Augusta Division.

March 29, 2006.

Stanley G. Jackson, Augusta, GA, Timothy D. Roberts, Oliver, Maner & Gray, LLP, Savannah, GA, for Patricia Jones Individually and for all other persons similarly situated, Plaintiff.

Harry D. Revell, Nicholson Revell, LLP, Augusta, GA, Thomas M. Byrne, Sutherland, Asbill & Brennan, LLP, Valerie Strong Sanders, Sutherland, Asbill & Brennan, LLP, Atlanta, GA, Amy R. Snell, Fulcher Hagler, LLP, Augusta, C. Jay Thomson, Morrison & Foerster, LLP, James Francis McCabe, Morrison & Foer-

ster, LLP, San Francisco, CA, James W. Purcell, Fulcher Hagler, LLP, Augusta, Andrew W. Broy, Sutherland, Asbill & Brennan, LLP, Atlanta, GA, for Banknorth Group, Inc. d/b/a People's Heritage Bank, Capital One Financial Corporation d/b/a Amerifee, Banknorth, N.A. formerly People's Heritage Bank, N.A., Amerifee, LLC d/b/a Orthodontist Fee Plan, Dental Fee Plan, Vision Fee Plan, and Cosmetic Fee Plan, Defendants.

## ORDER

MOORE, Chief Judge.

Before the Court are Defendants Banknorth, N.A.'s (formerly People's Heritage Bank, N.A.) and AmeriFee, LLC's ("AmeriFee") motions for summary judgment. (Docs. 85 & 91, respectively). For the reasons stated below, Banknorth, N.A.'s motion is **GRANTED IN PART**, and AmeriFee's motion is **DENIED** as moot.

## BACKGROUND

Plaintiff suffered injuries in an automobile accident, which required approximately $10,000 in dental treatment. This dental treatment was provided by Dr. Logan Nalley in Augusta, Georgia. Plaintiff's insurance paid for $5,000 of the treatment, leaving a balance of $5,000 to be paid by Plaintiff. Plaintiff chose to finance the entire amount of this remaining balance. Therefore, an employee in Dr. Nalley's office presented Plaintiff with the opportunity to enroll in a dental fee plan ("the Plan") offered by Defendant AmeriFee.[1] Plaintiff opted to participate in the Plan, and Dr. Nalley arranged for financing of the outstanding $5,000 dental bill through AmeriFee. As a result, on or about October 25, 2001, Plaintiff entered into a contract and signed a promissory note ("the Note") for $5,000. Defendant Banknorth, N.A., a subsidiary of Banknorth Group, Inc., issued the Note. The contract represented that the amount borrowed was $5,000, and the Promissory Note stated that the $5,000 would be paid to Dr. Logan Nalley. Plaintiff contends, however, that the amount actually paid to Dr. Nalley was only $4,625, 7.5% less than the amount borrowed.

Plaintiff asserts that, unknown to her, Dr. Nalley and Defendants had an agreement whereby Dr. Nalley, and all other dentists who utilized Defendants' services, would have 7.5% of the loaned amount deducted as an "administrative charge" under the Plan. In addition, Plaintiff contends that identical deduction agreements were used under Defendants' Orthodontic Fee Plan and Vision Fee Plan. Plaintiff further maintains that similar 5.9% and 6.9% deductions were used in Defendants' Family Fee Plan and Cosmetic Fee Plan, respectively.

As a result of the above-described practice, Plaintiff contends that Defendants routinely failed to disclose the "administrative charge" percentage for the loan transactions. Plaintiff alleges that Defendants then included the administrative charge as part of the loan transaction subject to additional interest paid by the borrower. Thus, Plaintiff maintains that each loan (1) misstated the true amount borrowed, (2) misstated the true amount of financing charges collected, and (3) misstated the amount paid to the provider for services.

This action was initially filed in the Superior Court of Richmond County on October 11, 2002. Plaintiff's Complaint includ-

---

1. The Plan is a credit program that offers participants an "easy way" to finance their dental bills. (Doc. 109, Ex. at 2.) Once a patient opts to participate, AmeriFee finances a loan to cover the amount they owe to their dental care provider. The Plan is available for procedures ranging from $300 to $25,000. (*Id.*)

ed claims under Maine's Consumer Credit Code, as well as a claim for breach of contract.[2] On November 14, 2002, Defendant AmeriFee removed the action to this Court with the alleged consent of the other Defendants. Defendant AmeriFee maintained that removal was appropriate because this Court had diversity jurisdiction over Plaintiff's claims. On November 27, 2002, Plaintiff filed a motion to remand, arguing that the amount in controversy was not sufficient to give this Court diversity jurisdiction over her case.

On December 2, 2002, while Plaintiff's motion to remand was pending, Defendants filed motions to dismiss, arguing, among other things, that Plaintiff's claim under the truth-in-lending provisions of the Maine Consumer Credit Code was barred because those provisions do not apply to transactions in which the creditor is a federally-chartered institution. Subsequently, on December 18, 2002, Plaintiff filed her amended complaint substituting her claim under the Maine Consumer Credit Code with a claim under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*

Two days later, on December 20, 2002, Defendant AmeriFee filed its "Notice of Filing of Complaint Based on Federal Law and Supplemental Memorandum in Opposition to Plaintiff's Motion to Remand." In this filing, Defendant asserted that Plaintiff's Amended Complaint contained a fed-

eral cause of action, which provided a basis for federal question jurisdiction pursuant to 28 U.S.C. § 1331. The filing of this federal claim, Defendant argued, rendered Plaintiff's motion to remand moot. Also, on January 6, 2003, Banknorth Group, Inc., AmeriFee and Capital One each filed motions to dismiss Plaintiff's Amended Complaint.[3]

On June 17, 2003, this Court, finding that Defendants had not met their burden of proving that the amount in controversy was sufficient to satisfy the requirements for diversity jurisdiction, granted Plaintiff's motion to remand. Additionally, because the ultimate issue in deciding Plaintiff's motion to remand was whether federal subject matter jurisdiction existed *at the time of removal,* the Court refused to base subject matter jurisdiction on the federal law claim contained in Plaintiff's Amended Complaint.

On June 19, 2003, this Court's remand Order arrived at the Superior Court of Richmond County. Later that day, Defendants AmeriFee and Capital One Financial Corporation ("Capital One") again removed the action to this Court.[4] This time, Defendants' removal was based on the federal cause of action asserted in Plaintiff's Amended Complaint. On November 23, 2004, Defendants AmeriFee and Banknorth, N.A. filed their individual motions for summary judgment on Plain-

---

2. Plaintiff explains that she asserts claims under Maine Law because the loan contract was received in Maine and provided that Maine law would apply. "The Erie doctrine generally requires district courts to apply the choice of law rules of the forum state." *Jenkins Brick Co. v. Bremer,* 321 F.3d 1366, 1369 (11th Cir.2003). Georgia courts will uphold choice of law provisions provided that applying the law of the jurisdiction chosen by the parties to a contract does not contravene Georgia's public policy or prejudice the interests of Georgia. *See Convergys Corp. v. Keener,* 276 Ga. 808, 582 S.E.2d 84 (2003).

3. On August 6, 2004, Plaintiff filed a stipulation of dismissal without prejudice in regard to Defendant Banknorth Group, Inc. ("BGI"). (Doc. 53.) The Court granted dismissal of Plaintiff's claims against BGI on October 21, 2004.

4. On October 9, 2004, the parties filed a stipulation of dismissal without prejudice as to Defendant Capital One. Recognizing the validity of this stipulation, the Court dismissed Plaintiff's claims against this Defendant on October 21, 2004.

tiff's Amended Complaint. On January 13, 2005, after receiving an extension of time to respond, Plaintiff filed her briefs in response to these motions. Later that month, Defendants proffered their replies.

Count I of Plaintiff's Amended Complaint asserts a claim under the Maine Consumer Credit Code. Specifically, Plaintiff argues that Defendants violated Title 9–A, Section 5–115 of the Maine Revised Statutes,[5] by "making a misrepresentation of the amount financed and to whom the amount of the loan was paid."[6] Plaintiff asserts that this constituted a misrepresentation of a material fact that induced all members of the proposed class to enter into a consumer credit transaction. Under Count I, Plaintiff requests that she and the individual members of the class each recover their actual damages and not less than $250 but not more than $1,000 per class member, plus the amount of interest charged on the administrative charges not paid to the medical service providers.

Count II of Plaintiff's Amended Complaint asserts a claim under the Federal Truth in Lending Act, 15 U.S.C. §§ 1638 & 1640.[7] Plaintiff alleges that Defendants violated 15 U.S.C. § 1638 and Regulation Z, promulgated thereunder in 12 C.F.R. § 226.18, of the Truth in Lending Act ("TILA") by "failing to disclose and by making a misrepresentation of the amount financed and to whom the amount of the loan was paid." In particular, Plaintiff contends that in calculating the amount financed, "the lender failed to subtract the amount withheld from the proceeds of the credit and show the true finance charge and interest rate." Based on this claim, Plaintiff maintains that the purported class is entitled, pursuant to 15 U.S.C. § 1640, to recover not more than $500,000 or 1% of the net worth, and to recover all costs of litigation including attorney's fees.

Count III asserts a breach of contract claim against Defendants.[8] Essentially, Plaintiff contends that Defendants' "administrative charge" deduction practice constituted a violation of the loan contracts with Plaintiff and other members of the class. Under this Count, Plaintiff requests that the class members be awarded their actual damages proven at trial.

---

5. Maine Revised Statute Title 9–A, Section 5–115 states:

> A creditor or a person acting for him may not induce a consumer to enter into a consumer credit transaction by misrepresentation of a material fact with respect to the terms and conditions of the extension of credit. A consumer so induced may rescind the sale, lease or loan or recover actual damages, or both.

6. Plaintiff asserts that for purposes of Count I, the class consists of herself and "all other borrowers from Banknorth, N.A. or its predecessor under the Dental Fee Plan, Orthodontic Fee Plan, Vision Fee Plan, Family Fee Plan, and/or Cosmetic Fee Plan who executed a *Promissory Note or Notes* in which Maine Law applies and either the loan is still outstanding or the loan was made within twenty (20) years of the filing of this Complaint and the last scheduled payment on the loan has not occurred or is within (2) years of the filing

of this Complaint." (Amend. Compl. at ¶ 30).

7. Plaintiff asserts that, for purposes of Count II, the class consists of herself, "and all other borrowers from Banknorth, N.A. or its predecessors under the Dental Fee Plan, Orthodontic Fee Plan, Vision Fee Plan, Family Fee Plan, and/or Cosmetic Fee Plan who executed a Promissory Note or Notes and the loan was made within one (1) year of filing of this complaint." (Amend.Compl.¶ 39).

8. Unlike the class in Counts I and II, the class under Count III is composed of Plaintiff and "all individual borrowers from Banknorth, N.A. or its predecessors under the Dental Fee Plan, Orthodontic Fee Plan, Vision Fee Plan, Family Fee Plan, and/or Cosmetic Fee Plan who executed a Promissory Note or Notes and the Promissory Note was *signed within four years of the filing of this Complaint.*" (Doc. 1, Ex. A at 11) (emphasis added).

## ANALYSIS

### I. Standard of Review

Summary Judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56 advisory committee's note). The Court's analysis ends "where there is no genuine issue of material fact and where the moving party is entitled to judgment as a matter of law." *Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller*, 957 F.2d 1575, 1578 (11th Cir.1992); *Real Estate Fin. v. Resolution Trust Corp.*, 950 F.2d 1540, 1543 (11th Cir.1992) (both citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552; *Tidmore Oil Co. v. BP Oil Co./Gulf Prods. Div.*, 932 F.2d 1384, 1387–88 (11th Cir.1991). The substantive law governing the action determines whether an element is essential. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *DeLong Equip. Co. v. Washington Mills Abrasive Co.*, 887 F.2d 1499, 1505 (11th Cir.1989).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. *Thompson v. Metro. Multi–List, Inc.*, 934 F.2d 1566, 1583 n. 16 (11th Cir.1991); *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir.1991). A dispute of material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. If the nonmoving party's response to the summary judgment motion consists of nothing more than mere conclusory allegations, then the court must enter summary judgment in the moving party's favor. *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir.1989). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, [then] there is no genuine issue for trial." *Matsushita Elec. Indus.*, 475 U.S. at 587, 106 S.Ct. at 1356.

In assessing whether Defendants are entitled to summary judgment in its favor, the Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to Plaintiff. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir.1992); *Ryder Int'l. Corp. v. First Am. Nat'l. Bank*, 943 F.2d 1521, 1523 (11th Cir.1991). The Court must avoid weighing conflicting evidence. *See Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513; *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 934 (11th Cir.1987). A mere "scintilla" of evidence supporting the opposing party's position, however, will not suffice. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990). Nevertheless, where

a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." *Barfield v. Brierton,* 883 F.2d 923, 933–34 (11th Cir. 1989) (citation omitted). Having set forth this standard of review, the Court will now address Defendants' arguments for summary judgment.

## II. *Plaintiff's Claims Under the Truth in Lending Act*

### A. *Claims Against AmeriFee*

As an initial matter, the Court notes that Plaintiff admits AmeriFee is not a creditor as contemplated in TILA. (Doc. 95, Ex. J at 3.) Consequently, she agrees that AmeriFee should be dismissed from this count of her Complaint. (*Id.*) Thus, there is no need for the Court to address AmeriFee's arguments on this count, and Plaintiff's Truth in Lending Act claim against Defendant AmeriFee is **DISMISSED.**

### B. *Claims Against Banknorth, N.A.*

Congress enacted TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair billing and credit card practices." 15 U.S.C. § 1601(a). To this end, TILA requires creditors to disclose clearly and accurately to consumers any charge that the consumer will bear under the credit transaction, as well as the annual percentage rate. *See* 15 U.S.C. § 1638(a). These disclosure requirements are designed to prevent creditors from circumventing TILA's objectives by burying the cost of credit in the price of goods sold. *Mourning v. Family Publications Serv.,* 411 U.S. 356, 364, 93 S.Ct. 1652, 1658, 36 L.Ed.2d 318, (1973).

The parties agree that the promissory note signed by Plaintiff contained certain disclosures. (Docs. 86 at 4–5; 107 at 4 & 109 at 49–50.) Specifically, the Note provided that the amount financed was $5,000, the annual percentage rate was 12.99%, and the total finance charge, had Plaintiff taken the five years allowed to repay the loan, was $1,861.00. (Doc. 109, Ex. 5 at 2.) Plaintiff, however, asserts that these disclosures were false and, thus, in violation of TILA. In support of this argument, she contends that when Banknorth, N.A. submitted the funds to AmeriFee, AmeriFee, pursuant to an agreement with Dr. Nalley, deducted 7.5% of the borrowed $5,000, or $375, as an administrative fee and paid the remaining $4,625 to Dr. Nalley.[9] Plaintiff maintains that the $375 fee qualifies as a "finance charge," and, as such, should have been disclosed under TILA. (Doc. 107 at 14.) Further, she claims that the amount of her loan should have been listed as $4,625, as that is the amount she believes she actually borrowed. (Doc. 107 at 2.) Defendant disputes this assertion, arguing, for various reasons, that the administrative fee is not a finance charge.

Both parties engage in a great deal of mental gymnastics in their arguments regarding this alleged finance charge. However, the issue is a great deal simpler than the briefs imply. As stated, one of the main purposes behind the disclosure requirements of TILA is to ensure that creditors do not "[bury] the cost of credit in the price of goods sold." *Mourning,* 411 U.S. at 364, 93 S. Ct at 1658. Once these disclosures are made, a consumer can comparison shop for credit by looking at the various annual percentage rates and tack-

9. Although Defendant Banknorth, N.A. initially appeared to argue that Dr. Nalley paid AmeriFee the $375 after receiving the full $5,000, it now seems to agree with Plaintiff that AmeriFee deducted the fee before transmitting any funds to the doctor.

ing on any finance charges. *See Buford v. Am. Fin. Co.*, 333 F.Supp. 1243, 1245 (D.C.Ga.1971). However, TILA's objective is thwarted when opportunistic creditors do not disclose finance charges, and instead attempt to hide them. For example, in *Knapp v. Americredit Financial Services., Inc.*, 245 F.Supp.2d 841 (S.D.W.Va. 2003), one of the cases relied upon by the Plaintiff in her response, the court held that an "acquisition fee" could qualify as a finance charge. The creditor charged the merchant this fee for funding customers' automobile purchases. *Id.* at 844. The amount was "based on the customers' credit-worthiness; the weaker the customer, the higher the fee." *Id.* This fee was then, arguably, added to the car price [10]. *Id.* In the instant case, no amount was added to the price charged to Plaintiff. Rather, the price she paid was the same amount that she would have paid at that time in a cash transaction.[11]

Plaintiff tries to skirt this fact in two ways: (1) she alleges that she would have received a discount from Dr. Nalley if she paid in cash and (2) she argues that, pursuant to the undisclosed agreement between Amerifee and Dr. Nalley, she really only owed $4,625. Each of these attempts fail. First, the discount offered by Dr. Nalley to patients appears to be connected to the timing, not the type, of payment. (Doc. 89 at 83.) According to both Plaintiff and Dr. Nalley, had Plaintiff chosen to pay her bill at the inception of her dental

work, she would have received a discount of 5%.[12] (Doc. 89 at 83; Doc. 79 at 2.) However, she did not choose to do so, thus she owed the full amount. Moreover, this offered discount was 2.5% less than the amount of the administrative charge. Second, Plaintiff clearly owed Dr. Nalley $5,000.[13] What Dr. Nalley chooses to do with that money does not alter her liability. Again, the main purposes of the Truth in Lending Act disclosure provisions are to allow customers to price their credit and to prevent any hidden or unreasonable charges. *Nussbaum v. Mortgage Serv. Am. Co.*, 913 F.Supp. 1548, 1553 (S.D.Fla. 1995). In this case, Plaintiff knew all along that she owed $5,000, and that was the amount she paid.

Thus, the administrative charge does not qualify as a finance charge and does not diminish or increase the debt owed by Plaintiff to Dr. Nalley. It follows that the disclosures made by Banknorth, N.A. regarding the finance charges, the annual percentage rate, and the amount borrowed were accurate, and, therefore, not in violation of the Truth in Lending Act, as alleged by Plaintiff.

Plaintiff also argues that the promissory note misstates the amount paid to the provider for services. The Note provides: "[a]mount paid to others on your behalf: $5,000.00 paid to Dr. Nalley . . . ." (Doc. 109, Ex. 5 at 2.) Plaintiff argues, and the undisputed facts seem to indicate, that the

---

10. The court noted that there was a question of fact regarding whether the car price included the acquisition fee. Two employees of the vendor claimed that the car price included the acquisition fee in every case. Subsequently, however, one of the employees stated that they did not add the fee to the already established sale price.

11. Under Regulation Z, the term finance charge does not include any charge of a type payable in a comparable cash transaction. 12 G.F.R. § 226.4(a).

12. Dr. Nalley stated in his affidavit that "had Ms. Jones paid me . . . at the inception of her dental work, then I would have accepted five percent (5%) less from her ($4,750.00) for immediate payment in complete satisfaction for the dental work I performed on her." (Doc. 79 at 2.)

13. By all accounts, after Plaintiff's insurer paid its part of her dental bills, approximately $5,000 remained outstanding on her account. (Doc. 89 at 29 & Doc. 79 at 2.)

doctor received only $4,625 from Ameri-Fee.[14] The remaining $375 was retained by AmeriFee in satisfaction of the debt Dr. Nalley owed AmeriFee under their agreement.[15] Although Plaintiff does not specify how this statement violates TILA, she does argue that Banknorth, N.A.'s actions generally go against 15 U.S.C. § 1638. Under 15 U.S.C. § 1638(a)(2)(B), a borrower can ask for a written itemization of the amount financed. One of the items that may be listed on request is "each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person." 15 U.S.C. § 1638(a)(2)(B). Plaintiff has not alleged that she requested an itemization, but, as the information required when a consumer requests an itemization appears on the Note, it seems that she may have.

Thus, the question arises: was Banknorth, N.A.'s statement that Dr. Nalley would be paid $5,000 false? The Court answers this question in the negative. AmeriFee, practically, paid Dr. Nalley $5,000—he received $4,625 in the form of a check and $375 in the form of a credit on his account with AmeriFee. If the Court adopted Plaintiff's logic, this problem would be avoided if AmeriFee and Dr. Nalley structured their transactions in a less efficient manner. For example, AmeriFee could have paid Dr. Nalley the $5,000 owed him by Plaintiff, and, then, Dr. Nalley could turn around and satisfy his debt to AmeriFee by writing a check for $375. The result would be the same. It seems irrational to require the parties to go through further lengths to accomplish the same end. Moreover, Plaintiff was not harmed.[16] The cost to her was fully disclosed in such a manner as to allow her to choose a creditor in an informed manner as contemplated by TILA.

Accordingly, because the disclosures made by Banknorth, N.A. to Plaintiff in the promissory note do not, as a matter of law, violate the Truth in Lending Act, summary judgment is due to be **GRANTED** in Defendant Banknorth, N.A.'s favor on Plaintiff's Truth in Lending Act claim.

## CONCLUSION

Plaintiff's Truth in Lending Act claim against Defendant AmeriFee is **DIS-**

---

14. Plaintiff filed a copy of the portion of Dr. Nalley's account history report that relates to this transaction. (Doc. 109 at 33–35.) These documents indicate that Dr. Nalley received a payment on Plaintiff's account on October 30, 2001 in the form a check for $4625. (*Id.* at 33–34.)

15. The parties appear to agree that AmeriFee retained $375 of the amount borrowed by Plaintiff. Further, this fact can be inferred from Dr. Nalley's account history report in two ways. First, as mentioned above, Dr. Nalley only received a check from AmeriFee for $4625. Second, the report includes a notation of a "professional disc" for $375 which was credited to Plaintiff's account on October 30, 2001, the same day Dr. Nalley received the $4625 check. (Doc. 109 at 33–35.) Also, Plaintiff and Banknorth, N.A. stipulate that "[u]nder Banknorth's agreement with Amerifee, the loan proceeds are trans-

ferred by Banknorth to an Amerifee account. Amerifee disburses the loan proceeds to the participating providers, minus Amerifee's administrative fee, as agreed with each such provider." (*Id.* at 46.)

16. Plaintiff suggests that, had Banknorth, N.A. paid Dr. Nalley $5,000 as it represented on the Note, Ms. Jones would be entitled to a professional discount from Dr. Nalley of $375 because that is what she owed him pursuant to the agreement between AmeriFee and Dr. Nalley. This assertion is illogical. Plaintiff is not and was never a party to the agreement between Banknorth, N.A. and Dr. Nalley. Moreover, the agreement, in part, serves to benefit patients such as Plaintiff. Although these patients are not charged any extra amount, they have the opportunity to choose to utilize the Plan. In order to provide the patients with this option, participating doctors pay a per-loan fee. (Doc. 97 at 2.)

MISSED. Further, Banknorth, N.A.'s motion for summary judgment on Plaintiff's remaining federal claim under the Truth in Lending Act is **GRANTED**, and that claim is **DISMISSED WITH PREJUDICE**. Having disposed of Plaintiff's federal law claims, the Court finds that this case should be remanded to state court for adjudication of her remaining state law claims. Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), this case is **REMANDED** to the Superior Court of Richmond County, Georgia.[17] The Clerk is **DIRECTED to CLOSE** this case. All pending motions are **DENIED** as moot.

---

**17.** Title 28 U.S.C. § 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction."